# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | Chapter 11 |
| RAMON AGUIRRE AND BERTHA ) | Case No. 14-24420 |
| AGUIRRE ) | |
|     Debtors. ) | |
| ) | |
| ) | Honorable Judge Timothy A. Barnes |

## SECOND AMENDED PLAN OF REORGANIZATION

RAMON AGUIRRE AND BERTHA AGUIRRE, Debtors and Debtors-in-Possession in this Chapter 11 Case (hereinafter "the Debtors"), by and through their Attorneys, Paul M. Bach and Penelope N. Bach of Sulaiman Law Group, Ltd, propose the following Second Amended Plan of Reorganization (hereinafter called "Plan" or "the Plan") in accordance with Section 1121 (a) of the Bankruptcy Code.

This Plan is the Debtors' proposal for the Debtors' payment of the Claims of their creditors as of the Petition Date.

The Debtors, by this Plan, solicit the acceptances of all creditors whose claims are Impaired. The Debtors believe that acceptance of this Plan would be in the best interest of the Debtors' creditors. THE DEBTORS URGE ALL CREDITORS TO ACCEPT THIS PLAN.

PREAMBLE

The Debtors filed their voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on June 30, 2014. The Debtors have operated their businesses (Food Service including catering and sit down service through R.G. Restaurant, Inc. d/b/a Bella Notte ("Bella Notte") and rental of real estate) and managed their financial affairs as Debtors-in-Possession since the inception of this reorganization case pursuant to Sections 1101 and 1107 of the

Bankruptcy Code. No trustee, examiner or committee of unsecured creditors has been appointed to serve in this Chapter 11 case.

The Debtors are the proponents and disbursing agents of this Plan. This Plan provides for distributions to the holders of allowed claims from the continued operation of Bella Notte and rental real estate.

The Debtors are currently the owners of three parcels or real estate. Below is information and the debt structure for each parcel of real estate:

**4599 Hatch Lane, Lisle, Illinois** - This parcel is the Debtors' home and residence. There is one lien on this parcel which is cross-collateralized with 1374 West Grand Avenue, Chicago, Illinois. The first line is in favor of JPMorgan Chase Bank, N.A. (Proof of Claim 4) in the amount of $1,415,540.24. The Debtors value this parcel of real estate at $450,000.00.

**1374 West Grand Avenue, Chicago, Illinois** - This parcel is a commercial property which is used by Bella Notte. There is one lien on this parcel which is cross-collateralized with 4599 Hatch Lane, Lisle, Illinois. The first line is in favor of JPMorgan Chase Bank, N.A. (Proof of Claim 4) in the amount of $1,415,540.24. The Debtors value this parcel of real estate at $450,000.00. The Debtors owe $40,000 in back taxes on this parcel to Wheeler-Dealer Ltd. d/b/a Wheeler Financial, Inc.

**1307 Burlington, Lisle, Illinois** - This parcel is a rental unit which presently rented producing $1,100.00 in gross income per month. There is no lien on this property. This parcel has been presently placed for sale with a Real Estate Agent. Upon sale the proceeds will be used to pay all real estates taxes currently owing for 4599 Hatch Lane, Lisle, Illinois 60532 and/or 1374 West Grand Avenue, Chicago, Illinois including but limited to all amounts now owed to the County Treasurer/County Clerk for these two parcels through 2013. Additionally, the remaining amount up to $50,000.00 will be paid to JPMorgan Chase Bank, N.A. as additional consideration to agree to this Plan of Reorganization.

## SUMMARY OF PLAN OF REORGANIZATION
## AS TO INDIVIDUAL SECURED CREDITORS

In Summary, and as stated in detail below, the Debtors own three improved parcels of real estate. The Debtors' Plan contains but is not limited to the following provisions:

**JPMorgan Chase Bank, N.A.** - (Class 1) - As stated in the property description above, JPMorgan Chase Bank, N.A. holds a first priority mortgage on 4599 Hatch Lane, Lisle, Illinois 60532 and 1374 West Grand Avenue, Chicago, Illinois. The Debtors shall pay JPMorgan Chase Bank, N.A. $8,000.00 per month and will pay off the claim of JPMorgan Chase within thirty-six

(36) months via amounts stated below (For details see description for Class 1). Insurance and real estate taxes are to be paid by the Debtors directly.

**County Treasurer/County Clerk and/or Tax Purchaser** - The Debtors owe pre petition real estate taxes for the real estate commonly known as 4599 Hatch Lane, Lisle, Illinois 60532 and 1374 West Grand Avenue, Chicago, Illinois. The Debtors shall list the 1307 Burlington, Lisle, Illinois, property for sale and use the net proceeds to pay pre-petition real estate taxes. As to 1374 West Grand Avenue, Chicago, Illinois, the Debtors owe approximately $40,000.00 for pre-petition taxes to Wheeler-Dealer Ltd. d/b/a Wheeler Financial, Inc. and Cook County. As to 4599 Hatch Lane, Lisle, Illinois the Debtors owe $5,600.00 for the First Installment of 2013 to the County of DuPage County. Both of these amounts shall be paid at the time of sale of 1307 Burlington, Lisle, Illinois.

**Unsecured Non Priority Creditors** - The Debtors are paying holders of Unsecured Non Priority Claims at total of $17,385.79 (100%) or $289.77 a month for seventy-three months (Class 3).

For a complete discussion of the mechanics of this Plan, the reader's attention is directed to the Disclosure Statement filed by the Debtors in connection with this Plan.

## ARTICLE I DEFINITIONS

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

1.1 <u>Administrative Expense</u>: A cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, or of operating the business of the Debtors and all allowances approved by the Bankruptcy Court in accordance with applicable provisions of the Bankruptcy Code.

1.2 <u>Allowed Claim</u>: A claim (i) a proof of which is filed within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtors as liquidated in amount and not disputed or contingent, or (iii) that has been allowed by Order of this Court, or (iv) that is allowed by the provisions of this Plan.

1.3 <u>Allowed Interest</u>: An "Interest" (as defined below) (i) proof of which has been filed within

the time fixed by the Bankruptcy Rules or within the time fixed by the Bankruptcy Court; or (ii) that has been scheduled in the list of equity security holders prepared and filed with the Bankruptcy Court; and (iii) that has been allowed by Order of this Court, or (iv) that is allowed by the provisions of this Plan.

1.4 Bankruptcy Code: Title 11 of the United States Code, Section 101 et seq., as amended.

1.5 Bankruptcy Court: The United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

1.6 Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure as prescribed by the Supreme Court of the United States.

1.7 Chapter 11: Chapter 11 of the United States Bankruptcy Code.

1.8 Claim: The term "Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.9 Confirmation: The entry by the Bankruptcy Court of a Final Order confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.10 Debtors: RAMON AGUIRRE AND BERTHA AGUIRRE

1.11 Debtors in Possession: RAMON AGUIRRE AND BERTHA AGUIRRE

1.12 Effective Date: Thirty (30) days following the entry of a Final Order confirming this Plan.

1.13 Final Order: (a) an order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek reargument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, reargument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an appeal, reargument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for reargument, reconsideration, rehearing or

certiorari has been denied, and the time to take any further appeal, reargument, reconsideration, rehearing or certiorari has expired, so that in the event of either (i) or (ii), such order or judgment shall have become final and non-appealable in accordance with applicable law.

1.14 Late Filed Claims: A claim for which the claimant filed a proof of claim after the deadline set by the Court for filing proofs of claim.

1.15 Month: A calendar month, including the month in which a date or event occurs.

1.16 Plan: This Plan of Reorganization including any amendments or modifications thereto.

1.17 Pro-rata: With respect to any distribution on account of any claim or matter, in the same proportion as the amount of such claim or matter bears to the aggregate amount of all claims or matters of its class.

1.18 Unless otherwise defined, the words and phrases used herein shall have the meanings ascribed in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 Allowed Claims against and Allowed Interests in the Debtors in this estate shall be fixed and determined as of the Petition Date and are classified as follows:

Administrative Expenses

Class One - JPMorgan Chase Bank, N.A.

Class Two- Allowed Real Estate Tax Claims for 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois.

Class Three - Allowed General Non Priority Unsecured Claims.

2.2 Resolution of Disputes: Disputes regarding the proper classification of Claims shall be resolved pursuant to the procedures established in the Bankruptcy Code, the Rules and other applicable laws. The Court shall have exclusive jurisdiction over disputes concerning the

classification of claims. Resolution of any such disputes shall not be a condition precedent to Confirmation or Consummation of the Plan.

2.3 A Claim or Interest is classified in a particular Class only to extent that the Claim or Interest qualifies within the description of that Class.

2.4 Distributions of Disputed Claims: Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the respective holder of an allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

ARTICLE III
TREATMENT OF CLAIMS AND INTERESTS

### 3.1 TREATMENT OF UNIMPAIRED CLAIMS

The following class(es) are unimpaired by the Plan in accordance with Section 1124 of the Bankruptcy Code or are not required to be classified in this Plan of Reorganization under provisions of the Bankruptcy Code

**Administrative Expenses** These claimants represent claims arising post-petition. Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtors, in full, in cash or as otherwise agreed. Payment of Professional Fees shall be subject to the provisions of Section 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. United States Trustee and bankruptcy attorney fees shall be paid in full on or before the Effective Date or as they come due thereafter. The source of payment for these amounts will be the Debtors' income from operations and from employment. The Debtors expect Administrative Claims will be approximately $60,000.00 as of the Effective date.

### 3.2 TREATMENT OF IMPAIRED CLAIMS

The claims in the Classes listed below are impaired by the Plan:

#### A. Class Two-ALLOWED SECURED CLAIMS THAT ARE IMPAIRED

Allowed Secured Claims that are impaired include each Allowed Secured Claim held by a Creditor that the Debtors were not current and in default with on the Petition date relating to real estate that is secured by one or more of the Debtors' Assets and is not disputed, contingent or unliquidated and allowed as of the effective date. Each creditor shall be paid as stated in the detail under each claim.

CLASS 1-JPMorgan Chase Bank, N.A. (hereinafter called "JPMorgan") as to 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois 606042. JPMorgan holds a perfected, first priority security interest on the Debtors' real estate commonly known as 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois. JPMorgan holds an allowed claim in the amount of $1,415,540.24 (the "Claim of JPMorgan"). Debtors shall make the following payments relating to the Claim of JPMorgan:

    a) Debtors shall pay the sum of $8,000.00 per month on the 22nd day of each month to JPMorgan until the amounts provided below are paid to JPMorgan to release its mortgages are paid in accordance with subparagraph (d) (this is an extension of the Adequate Protection Order previously entered by this Court on September 18, 2014 as Docket 52). JPMorgan may be prepaid without penalty by the date and in the amounts stated below in accordance with the timing and the terms of subparagraph (d) (the "Secured Claim"). Once JPMorgan's Secured Claim has been paid in accordance with the terms of subparagraph (d), JPMorgan shall cause to release, its liens, mortgages and security interest. JPMorgan's Secured Claim is impaired under the Plan. All remaining terms of the original note and mortgages that are not inconsistent with

this section shall remain in full force and effect and JPMorgan's Secured Claim shall remain perfected and in full force and effect to the same nature and extend as its pre-petition security interest, except as provided herein.

b)      Debtors shall keep the 4599 Hatch Lane, Lisle, Illinois and the 1374 West Grand Avenue, Chicago, Illinois properties insured against loss or damage resulting from fire, flood or other hazards, casualties and contingencies with replacement cost endorsements (without depreciation) in such reasonable amounts as approved by JPMorgan and with JPMorgan named as the loss payee, so as long as the Debtors are the owners of the properties.

c)      Debtors shall pay directly, all post-petition taxes, personal and real property taxes, assessments and governmental and other charges, levied or imposed, which are, or which if unpaid might become, a lien or charge upon 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois.

d)      Debtors may pay and JPMorgan shall accept as payment of the Secured Claim of JPMorgan, the following payments:   1)  On or before six (6) months after the Effective Date: $1,000,000.00;  2) On or before twelve (12) months after the Effective Date: $1,050,000.00;  3) On or before eighteen (18) months after the Effective Date:  $1,100,000.00;  4) On or before twenty-four (24) months after the Effective Date:  $1,150,000.00;  5) On or before thirty (30) months after the Effective Date:  $1,200,000.00;  and  6) On or before thirty-six (36) months after the Effective Date: $1,250,000.00. In the event the Debtors fail to pay the Secured Claim of JPMorgan as stated herein within thirty-six (36) months of the Effective Date, the Debtors shall be in default and JPMorgan may proceed with foreclosure as set forth in subparagraph (e).

e)      In the event the Debtors do not comply with any provision of this Plan as it relates to JPMorgan, including all subparagraphs contained herein, counsel for JPMorgan shall serve

Case 14-24420   Doc 69   Filed 02/10/15   Entered 02/10/15 16:23:09   Desc Main
                         Document      Page 9 of 14

upon the Debtors at both property addresses (4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois) by first class mail and the Debtors' attorney, by regular mail and by electronic mail, a fourteen (14) day notice to correct any default. In the event Debtors not cure the default prior to the expiration of the fourteen (14) day notice period, then JPMorgan shall proceed with judicial foreclosure sales for both the 4599 Hatch Lane, Lisle, Illinois and the 1374 West Grand Ave., Chicago, Illinois, properties. In the event of a default on payment of the Secured Claim of JPMorgan, either by a failure to make the monthly payments in subparagraph (a) or the failure to pay the Secured Claim according to subparagraph (d) and after the judicial sale, the Unsecured Claim shall remain due and owing and payable according to the terms of sub-paragraph (f).

   f)   After payment in full of the Secured Claim of JPMorgan according to sub-paragraph (d), the balance due for the Unsecured Claim of JPMorgan shall be paid as follows: Beginning the 22nd day of the month following the payment in full of the Secured Claim of JPMorgan, the Debtors shall make monthly payments in the amount of $4,000.00 per month, due on the 22nd day of the month (without interest) until balance of the Unsecured Claim owed to JPMorgan is paid in full.

   g)   **To induce JPMorgan to consent to this Plan, the Debtors waive and release and forever discharge JPMorgan and its officers, directors, attorneys, agents, and employees (the "Release Parties") from any liability, damage, claim, (including, without limitation, cross-claims, counterclaims, rights of setoff and recoupment), causes of action, demands, suits, costs, expenses and damages, defenses, including the defense of breach of the covenant of good faith and fair dealing, loss or expense of any kind that they may have against the Released Parties or any of them arising out of or relating to the Loan Documents, the Claim of**

**JPMorgan or this Plan. The provisions of this section shall survive payment in full of the Claim**

**of JPMorgan as defined herein, the termination or completion of the Plan, including without**

**limitation, completion of foreclosure of the Properties.**

CLASS 2 -Claim of Wheeler-Dealer Ltd., d/b/a Wheeler Financial, Inc./Cook County Clerk and/or DuPage County Treasurer/DuPage County Clerk.  Debtors owe over $40,000 to Wheeler-Dealer Ltd., d/b/a Wheeler Financial, Inc., a real estate tax purchaser, Cook County Clerk and/or DuPage County Treasurer/DuPage County Clerk, for past due real estate taxes, interest and penalties.  The real estate commonly known as 1307 Burlington, Lisle, Illinois, has been placed for sale with a Real Estate Agent and shall remain for sale until sold.  Upon sale of the property, the net proceeds from the sale (defined as payment of broker's commission, real estate tax prorations, usual and customary title charges, usual and customary closing costs and a reasonable attorneys' fee, not to exceed $3,000) will be used to pay the pre-petition real estate taxes currently owing for 4599 Hatch Lane, Lisle, Illinois 60532 and 1374 West Grand Avenue, Chicago, Illinois, including but limited to all amounts now owed to the Wheeler-Dealer Ltd., d/b/a Wheeler Financial, Inc./Cook County Clerk and the DuPage County Treasurer (both Cook and DuPage County) for these two parcels through 2013.  Additionally, the balance of the net proceeds up to $50,000.00 shall be paid to JPMorgan as additional consideration to agree to this Plan of Reorganization. This paragraph applies to the prepetition real estate taxes on the real estate commonly known as 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois only.  This claim is impaired.

B.      **CLASS THREE- ALLOWED NON PRIORITY UNSECURED CLAIMS-**

<u>CLASS THREE UNSECURED NON PRIORITY CLAIMS</u>-Each Holder of Allowed Class 3 Claims which total $17,385.79 shall be paid 100% percent without interest of all Claims held by such Holders beginning the month after plan confirmation for sixty months with a payment each month of $289.77 pro rata. (100%)

ARTICLE IV IMPLEMENTATION OF PLAN

4.1 All of the assets of the Debtors and this estate shall vest in the Debtors upon Confirmation of the Plan subject only to the terms and conditions of this Plan.

4.2 Debtors shall be entitled to manage their affairs without further Order of this Court.

4.3 Upon Confirmation, the Confirmed Plan shall become a binding agreement between the Debtors and his creditors, superseding all pre-petition obligations of the Debtors to his Creditors. So long as Debtors act in accordance with the Plan terms, Creditors shall have no right of action (including but not limited to proceeding with a foreclosure sale and other State Court rights) against Debtors to pursue Debtors for payment and Creditors are enjoined and prohibited from taking such action. Any such action by a Creditor violating this paragraph shall give the Debtors a Cause of Action against such Creditor for Damages which shall be determined just as Damages are computed and allowed for a Violation of the Automatic Stay/Discharge Injunction/Confirmation Order.

4.4 This Plan is self-executing. The Debtors shall not be required to execute any newly created documents to evidence the claims, liens or terms of repayment to the holder of any Allowed Claim. Furthermore, upon the completion of the payments required under this Plan to the holders of Allowed Claims, such Claims and any liens that may support such Claims shall be deemed released and discharged.

ARTICLE V EXECUTORY CONTRACTS

5.1 All executory contracts and unexpired leases which exist between the Debtors and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned or rejected by the Debtors shall be deemed assumed by the Debtors as of the Confirmation of this Plan. Any security deposits held as security for tenants of the Debtors shall not be affected by this Plan of Reorganization.

## ARTICLE VI
## COURT'S RETENTION OF JURISDICTION

6.1 The Bankruptcy Court shall retain jurisdiction after Confirmation to: (i) consider applications for fees and allowances for professional persons; (ii) supervise the implementation of this Plan; (iii) hear and conclude all adversary proceedings or contested matters; (iv) resolve disputes regarding interpretation of this Plan; (v) fix expenses of administration; (vi) enter Orders to further consummation of the Plan; (vii) approve modification of the Plan upon motions brought before the Bankruptcy Court; (viii) consider all applications and matters pending before the Bankruptcy Court on the date of Confirmation; (ix) hear and conclude any adversary proceedings and other matters relating or giving rise to litigation recoveries (x) enter any order, including injunctions, necessary to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary; (xi) close and or reopen this Bankruptcy Case for any appropriate purpose but specifically to enter a Discharge and/or hold proceedings related to the Debtors' Discharge; and (xii) enter an Order concluding and terminating this Chapter 11 case.

## ARTICLE VII
## CONFIRMATION OF PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE

7.1 The Debtors reserve the right, pursuant to Section 1129(b) of the Bankruptcy Code, to request the Bankruptcy Court to confirm the Plan if all applicable requirements of Section 1129

(a) of the Bankruptcy Code, other than Section 1129(a) (8), are met.

## ARTICLE VIII
## UNCLAIMED PROPERTY

8.1 In the event that any distribution made by the Debtors under this Plan remains unclaimed ninety (90) days after such distribution is made, this distribution will become property of the Debtors and shall not be recouped in subsequent distributions. After expiration of the ninety (90) day period set forth herein, the claimant whose funds remain unclaimed shall forfeit any and all legal and equitable right to such distribution and the proceeds thereof.

## ARTICLE IX
## INVALIDATION OF LIENS AND DISCHARGE

9.1 The provisions of the confirmed Plan shall bind all creditors and other parties in interest, whether or not such persons accept the Plan. The distributions provided under the Plan shall be in exchange for and in complete satisfaction and release of all Claims against any of the assets or properties of the Debtors. Unless otherwise specifically provided to the contrary herein or in the Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded from asserting any Claim against the Debtors.

## ARTICLE X
## INTEREST AND PENALTIES

10.1 Except as otherwise provided herein, or required by the Bankruptcy Code, no interest or penalties accruing on or after June 30, 2014, shall be paid on any Allowed Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment pursuant to the Plan.

## ARTICLE XI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

11.01 Disputed Claim. A disputed claim is a claim that has not been allowed or

disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors has scheduled such claim as disputed, contingent, or unliquidated.

11.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

11.03 Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE XII
## DISCHARGE

12.01.Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan in Class Three, or as otherwise provided in § 1141(d)(5) of the Code.

RAMON AGUIRRE AND BERTHA AGUIRRE

By: /s/Paul M. Bach
Paul M. Bach, one of their attorneys

DEBTOR' S COUNSEL:
Paul M. Bach
Penelope N. Bach
SULAIMAN LAW GROUP, LTD
900 Jorie Blvd Suite 150
Oak Brook, IL 60523
(630) 575 - 8181