IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLIONIS, EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | NO. 14 B 24420 |
| RAMON AGUIRRE and | ) | |
| BERTHA AGUIRRE | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | |
| | ) | Honorable Judge Timothy A. Barnes |

CERTIFICATE OF SERVICE OF CLASS 2 BALLOTS

I, Paul M. Bach, an attorney, certify that I served true and correct copy of the following: Class 2 Ballot for Accepting or Rejecting Debtor's Plan of Reorganization et al; Order of February 11, 2015 setting Combined Hearing on Adequacy and Confirmation; Debtors' Second Amended Disclosure Statement with Attachments; and Debtors' Second Amended Plan of Reorganization. The documents as set forth were served on the parties listed on the attached Exhibit B (Creditor Classification and Allowed Claims) which have a Class 2 Claim listed on Exhibit B (Creditor Classification and Allowed Claims) which are entitled to vote as a Class 2 creditor to those stated on the attached service list by the method stated on the attached service list on February 23, 2015.

/s/Paul M. Bach_____
Paul M. Bach, Of Counsel
Sulaiman Law Group, Ltd.
900 Jorie Blvd. Suite 150
Oak Brook, Illinois 60523
(630) 575 8181
(630) 575 8188

DEBTOR' S COUNSEL:
Paul M. Bach
Penelope N. Bach
Sulaiman Law Group, Ltd.
900 Jorie Blvd. Suite 150
Oak Brook, Illinois 60523
(630) 575 8181
(630) 575 8188

## SERVICE LIST

**Wheeler-Dealer Ltd.**
C/O RA Timothy E. Grey
120 N. LaSalle Street Suite 1350
Chicago, Illinois 60602

**Cook County Clerk**
69 W. Washington, Suite 500
Chicago, Illinois 60602

**Cook County Clerk**
118 N. Clark Street
Room 434
Chicago, Illinois 60602

**Cook County State's Attorney**
69 West Washington, Suite 3200
Chicago, Illinois 60602

**Cook County Treasurer's Office**
118 North Clark Street, Suite 112
Chicago, Illinois 60602

**Ryan Fasshauer, Secretary**
**Wheeler-Dealer Ltd.**
120 North LaSalle Street #1350
Chicago, Illinois 60602

DuPage County Treasurer's Office
C/O DuPage County State's Attorney Office
Barbara Reynolds
503 N. County Farm Road
Wheaton, Illinois 60187

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLIONIS, EASTERN DIVISION

| | |
|---|---|
| In Re: | ) |
| | ) NO. 14 B 24420 |
| RAMON AGUIRRE and | ) |
| BERTHA AGUIRRE | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) |
| | ) Honorable Judge Timothy A. Barnes |

CLASS 2 BALLOT FOR ACCEPTING OR REJECTING PLAN OF
REORGANIZATION

## IMPORTANT NOTICE

Debtors, RAMON AGUIRRE and BERTHA AGUIRRE, filed a Second Amended
Plan of Reorganization (the "Plan"), and a Second Amended Disclosure Statement to the
Plan (the "Disclosure Statement") in this case. The Disclosure Statement provides
information to assist you in deciding how to vote on your ballot.

You should receive the Disclosure Statement, and the Plan before you vote. (A copy
of these documents is being sent to you along with this ballot.) You may wish to seek legal
advice concerning the Plan and Plan Amendment and your classification and treatment under
the Plan and Plan Amendment. Your claim has been placed in Class 2 under the Plan. If you
hold claims or equity interests in more than one class, you will receive a ballot for each class
in which you are entitled to vote.

If your ballot is not received by the Clerk of the United States Bankruptcy Court, 219
S. Dearborn Street, 7th Floor, Chicago, Illinois 60604 on or before April 1, 2015 and such
deadline is not extended, your vote will not count as either an acceptance or rejection of the
Plan.

If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or
not you vote.

See next page of this notice for the voting section of the Ballot.

BALLOT
(Case of Ramon Aguirre and Bertha Aguirre 14 B 24420)

The undersigned, the holder of a claim against the Debtors under Class 2 in the claimed unpaid amount of $_____ _____ hereby

_____ACCEPTS          OR          _____REJECTS

the Debtors' Second Amended Plan of Reorganization.

Print or type creditor name:_____

Signature:_____

Title (if corporation or partnership)_____

Address:_____

_____

PLEASE RETURN BOTH PAGES OF THIS DOCUMENT (on or before April 1, 2015) to:

Clerk of the United States Bankruptcy Court, 219 S. Dearborn Street, 7th Floor, Chicago, Illinois 60604

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLIONIS, EASTERN DIVISION

In Re:                              )
                                    )    NO. 14 B 24420
RAMON AGUIRRE and                   )
BERTHA AGUIRRE                      )
                                    )    Chapter 11
        Debtors.                    )
                                    )
                                    )    Honorable Judge Timothy A. Barnes

**ORDER AND NOTICE SETTING HEARING ON DEBTORS' AMENDED PLAN OF
REORGANIZATION, AMENDED DISCLOSURE STATEMENT AND FIXING TIME
FOR FILING OBJECTIONS TO THE PLAN AND DISCLOSURE STATEMENT**

IT IS HEREBY ORDERED AND NOTICE IS GIVEN THAT:

1. Ramon Aguirre and Bertha Aguirre ("Debtors") filed a Second Amended

   Plan of Reorganization on February 10, 2015 (the "plan") for themselves

   in this case, and a Second Amended Disclosure Statement on February

   10, 2015 (the "Disclosure Statement") relating thereto.

2. On April 15, 2015 at 10:30 am. a hearing to consider approval of the

   Disclosure Statement will be held by this Court or by another judge

   sitting in this Court's place, in Room 613 of the United States

   Courthouse, 219 S. Dearborn Street, Chicago, Illinois. If at the

   conclusion of said hearing the Disclosure Statement is approved by the

   court, the Court will immediately hold a hearing to consider confirmation

   of the Plan.

3. Debtor is to mail this order with copy of the Plan and Disclosure

   Statement to our parties required to vote and all tenants on or before

   February 24, 2015.

4. April 1, 2015, is fixed as the last day for those creditors entitled to vote

upon the Plan by written ballot, written acceptances or rejections of the

plan with the Clerk of the Bankruptcy Court, 7th Floor, 219 S. Dearborn

Street, Chicago, IL 60604.

5.      Pursuant to Federal Rules of Bankruptcy Procedure 3017(a) and 3020(b),

April 1, 2015 is the last day for filing with this Court and serving upon

the parties listed below via U.S. mail or facsimile transmission, any

objection to the approval of the Disclosure Statement or objection to the

confirmation of the Plan. Any Objection not filed and served in

accordance with this Order is waived.

6.      Objections should be filed with the Clerk of the Bankruptcy Court, 219 S.

Dearborn, 7th Floor, Chicago, IL 60604 and served upon the following

parties.

Debtor's Attorney                    U.S. Trustee's Office
Paul M. Bach                         Office of the US Trustee
Sulaiman Law Group, Ltd.             219 S. Dearborn
900 Jorie Blvd Suite 150             Suite 873
Oak Brook, IL 60523                  Chicago, IL 60604

6,      Counsel for Debtor shall file a ballot report with regard to the Plan on or

before April 6, 2015.

Dated: **FEB 1 1 2015**

United States Bankruptcy Judge

DEBTOR' S COUNSEL:
Paul M. Bach
Penelope N. Bach
SULAIMAN LAW GROUP, LTD
900 Jorie Blvd Suite 150
Oak Brook, IL 60523
(630) 575 - 8181

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLIONIS, EASTERN DIVISION

In Re:

RAMON AGUIRRE AND BERTHA
AGUIRRE
       Debtors.

Chapter 11
Case No. 14-24420

Honorable Judge Timothy A. Barnes

### SECOND AMENDED DISCLOSURE STATEMENT

RAMON AGUIRRE AND BERTHA AGUIRRE, Debtors and Debtors in Possession

herein, by and through their Attorneys, Paul M. Bach and Penelope N. Bach, of Sulaiman Law

Group, file this Second Amended Disclosure Statement ("Disclosure Statement") pursuant to

Section 1125 of the Bankruptcy Code and in conjunction with their Second Amended Plan of

Reorganization ("Plan"). (A copy of the Amended Plan of Reorganization is attached to this

Amended Disclosure Statement as Exhibit A).

### INTRODUCTION

The Debtors filed their voluntary petition for relief pursuant to Chapter 11 of the

Bankruptcy Code on June 30, 2014. The Debtors have operated their business (food service

through R.G. Restaurant, Inc. d/b/a Bella Notte ("Bella Notte") and rental of real estate).

Debtors have also managed their financial affairs as Debtors-in-Possession since the inception of

this reorganization case pursuant to Sections 1101 and 1107 of the Bankruptcy Code. No trustee,

examiner or committee of unsecured creditors have been appointed to serve in this Chapter 11

case.

The Debtors are the proponents and disbursing agents of this Plan. This Plan provides for

-1-

distributions to the holders of allowed claims from the continued operation of Belle Notte and rental real estate (until sold).

The attached Exhibit B lists each creditor with the relevant class, amount of the secured and unsecured claim(s) of each creditor. After determining, based on Exhibit B, the class of a particular creditor, the chart below will show the total dollar amounts and timing of payments to be made under the plan. This chart identifies: all classes of claims, the total amount of claims to each class, and the amount (dollar and percentages) to be paid to each class. Exhibit B (as well as the description on the attached chart) shows the composition of each class.

In Summary, there are administrative claims and three classes of creditor claims which are to be treated as follows:

|  | TOTAL $ AMOUNT CLAIMED | TIMING OF PAYMENTS | NUMBER OF CLAIMS AND AMOUNT TO BE PAID IN PLAN |
|---|---|---|---|
| Administrative Claims | $60,000.00 (estimated) | Effective date of Plan | Debtors' attorney and United States Trustee (100%) |
| Class 1 -Secured JPMorgan Chase Two Properties | $1,415,540.24 plus interest | $8,000.00/month with payoff amount reduced based on timing of payment | One claim to be paid |
| Class 2 -Secured County Treasurer and/or Tax Buyer 2 Properties | $40,000.00 secured | Sale of real estate | One claim to be paid |
| Class Three-Unsecured See Exhibit B for Class Composition | $17,385.79 | $289.77/month beginning month 1 for 60 months | 5 claims totaling $17,385.79 paid pro rata (100%) |

## SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN

The Debtors' Plan provides that, on its Effective Date, the Debtors will retain all of their

-2-

assets and will thereafter be responsible for paying the Claims of their creditors, as provided

below.

In general, the Debtors will pay Administrative Claims and Three classes of Creditors

Claims.

a. AMDINISTRATIVE CLAIMS: This Claim will be paid on or within thirty days of

the Effective Date of the Plan or in accordance with agreements between the Debtors

and each holder of an Administrative Claim. United States Trustee's fees and other

bankruptcy fees shall be paid in full on or before the Effective Date or as they come

due thereafter. The source of the payment for these amounts will be the Debtors'

income (Real Estate Rentals until 1307 Burlington, Lisle, Illinois sold and from Belle

Notte).

b. CREDITOR CLAIMS:

1. The following parties have filed claims or have secured claims and are being

treated as secured under the Plan: JPMorgan Chase Bank, N.A.; (Class 1) and

the Wheeler-Dealer Ltd. d/b/a Wheeler Financial, Inc. and/or Cook County

Treasurer/Cook County Clerk and DuPage County Treasurer/Dupage County

Clerk pre petition real estate taxes for 4599 Hatch Lane, Lisle, Illinois 60532 and

1374 West Grand Avenue, Chicago, Illinois (Class 2).

2. There is one class of unsecured claims: The unsecured class (Class 3) contains

all of the unsecured non priority claims against the debtor. See Exhibit B for the

amount and creditors holding Unsecured Non Priority Claims.

3. Secured Claims will be paid interest on payments subsequent to June 30, 2014 at

-3-

the rate of interest provided in the underlying security documents except as

provided for under each individual claim. No interest will be paid subsequent to

June 30, 2014 to unsecured creditors.

4. Any uncashed checks or returned distributions shall be the property of the Debtor.

The Debtors advise all Creditors and other parties in interest that under Section

1127(a) of the Bankruptcy Code, the Debtors may, within certain limits, modify

the Plan at any time before confirmation. Further negotiations between the

Debtors and one or more of his creditors my result in such modifications. The

Debtors do not expect or intend to agree to modifications that would materially

and\or adversely influence the feasibility of the Plan as now constituted. The

Debtors will bring all such proposed modifications to the attention of the

Bankruptcy Court by appropriate pleading before they become effective.

c. Plan Funding: The Debtors will make all payments out of their future income from

Belle Notte and from their rental and potential sale of real estate. The Debtors are

the disbursing agent. The Debtors expect to receive net income sufficient to pay all

Claims as provided for by the Plan of Reorganization. Creditors can review a

detailed projection of the Debtors' Income and Expenses which is attached.

ANALYSIS OF THE DEBTORS' INCOME, CURRENT ASSETS AND LIABILITIES

a. The Debtors base their projections on historical income and in consideration of the

fact that the real estate rental and food service business is variable at times. The

regular income of the Debtors via their food service and rental of real estate will

allow them to fund the Plan. Creditors can review complete projections of Debtors'

income and expenses and a valuation of the Debtors' assets (see attached).

-4-

b. The Debtors' income does not follow a normal distribution or pattern. The winter

months for Belle Notte is often quite busy because of proximity to the United Center.

As a result, the Debtors via the food service business sometimes receive substantial

net income during the winter months followed by one or more months of losses

during the summer months. The Debtors project income sufficient on average to

make all required payments under the Plan.

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Bankruptcy Code requires that a plan of reorganization place each classified

creditor's Claim in a class with other Claims or Interests that are "substantially similar." The

dollar amount of a claim is usually not a basis upon which to distinguish it from other Claims.

As stated, the Plan establishes three classes of Claims. The Bankruptcy Court must

independently conclude that the Plan's classification scheme is authorized, but any creditor who

believes that that the Plan has improperly classified any group of Claims or Interest may object

to confirmation of the Plan. The Debtors believe that the Plan's classification of Claims fully

complies with the requirements of the Bankruptcy Code and applicable case law.

General Terms: All Claims submitted by creditors shall be fixed and determined in

accordance with the proof of claim filed with the Clerk of the United States Bankruptcy Court.

Unless otherwise specifically provided for in this Disclosure Statement following the Petition

Date:

a. No creditor shall accrue interest on its Claim after the Petition Date;

b. If the agreement between the parties so provides, a Creditor may accrue interest on its

Claim (at the rate provided in the agreement). With the exception of the Secured

-5-

Claims, if so provided in the Plan of Reorganization, the Debtors do not believe that

they are required to pay any interest on any Claim. See above for a list of creditors

that will and will not be paid interest

e. After the Petition Date, each Creditor that is not secured or receiving interest may not

collect:

1. default interest;

2. penalties; the right to accelerate payment; and

3. contractual attorney's fees.

d. Effect of Filing and/or Not Filing Claims-Each Creditor, who has filed a proof of

claim, is not bound by the Debtors' estimates of Claims against it. Any creditor, who

did not file a proof of claim, is bound by the Debtors' calculation of the amount owed

to that creditor. If the Debtors disputed a debt on his schedules and the Creditor in

question did not file a proof of claim, the debt shall be deemed disallowed. Claims

for expenses of administration may be allowed in the discretion of the Bankruptcy

Court and for amounts over which the Debtors have no control.

## TREATMENT OF UNIMPAIRED AND UNCLASSIFIED CLAIMS

The following class is unimpaired by the Plan in accordance with Section 1124 of the

Bankruptcy Code or is not required to be classified in this Plan of Reorganization under the

provisions of the Bankruptcy Code.

## ALLOWED CLAIMS THAT ARE NOT IMPAIRED

a.    **Administrative Expenses** - These claimants represent claims arising post-petition. Any

Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtors, in

full, in cash or as otherwise agreed. Payment of Professional Fees shall be subject to the

-6-

provisions of Section 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. United States Trustee and other bankruptcy fees shall be paid in full on or before the Effective Date or as they come due thereafter. The source of payment for these amounts will be the Debtors' income from operations and from employment. The Debtors expect Administrative Claims will be approximately $60,000.00 as of the Effective date.

## ALLOWED CLAIMS THAT ARE IMPAIRED

### A. Class Two-ALLOWED SECURED CLAIMS THAT ARE IMPAIRED

Allowed Secured Claims that are impaired include each Allowed Secured Claim, held by a Creditor, that the debtors were not current and in default with on the Petition date relating to real estate that is secured by one or more of the Debtors' Assets and is not disputed, contingent or unliquidated and allowed as of the effective date. Each creditor shall be paid as stated in the detail under each claim.

CLASS 1-JPMorgan Chase Bank, N.A. (hereinafter called "JPMorgan") as to 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois 606042. JPMorgan holds a perfected, first priority security interest on the Debtors' real estate commonly known as 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois. JPMorgan holds an allowed claim in the amount of $1,415,540.24 (the "Claim of JPMorgan"). Debtors shall make the following payments relating to the Claim of JPMorgan:

a)   Debtors shall pay the sum of $8,000.00 per month on the 22nd day of each month to JPMorgan until the amounts provided below are paid to JPMorgan to release its mortgages are paid in accordance with subparagraph (d) (this is an extension of the Adequate Protection Order previously entered by this Court on September 18, 2014 as Docket 52). JPMorgan may be prepaid without penalty by the date and in the amounts stated below in accordance with the

-7-

timing and the terms of subparagraph (d) (the "Secured Claim"). Once JPMorgan's Secured

Claim has been paid in accordance with the terms of subparagraph (d), JPMorgan shall cause to

release, its liens, mortgages and security interest. JPMorgan's Secured Claim is impaired under

the Plan. All remaining terms of the original note and mortgages that are not inconsistent with

this section shall remain in full force and effect and JPMorgan's Secured Claim shall remain

perfected and in full force and effect to the same nature and extend as its pre-petition security

interest, except as provided herein.

    b)    Debtors shall keep the 4599 Hatch Lane, Lisle, Illinois and the 1374 West Grand

Avenue, Chicago, Illinois properties insured against loss or damage resulting from fire, flood or

other hazards, casualties and contingencies with replacement cost endorsements (without

depreciation) in such reasonable amounts as approved by JPMorgan and with JPMorgan named as

the loss payee, so as long as the Debtors are the owners of the properties.

    c)    Debtors shall pay directly, all post-petition taxes, personal and real property

taxes, assessments and governmental and other charges, levied or imposed, which are, or which

if unpaid might become, a lien or charge upon 4599 Hatch Lane, Lisle, Illinois and 1374 West

Grand Avenue, Chicago, Illinois.

    d)    Debtors may pay and JPMorgan shall accept as payment of the Secured Claim of

JPMorgan, the following payments: 1) On or before six (6) months after the Effective Date:

$1,000,000.00; 2) On or before twelve (12) months after the Effective Date: $1,050,000.00; 3)

On or before eighteen (18) months after the Effective Date: $1,100,000.00; 4) On or before

twenty-four (24) months after the Effective Date: $1,150,000.00; 5) On or before thirty (30)

months after the Effective Date: $1,200,000.00; and 6) On or before thirty-six (36) months

after the Effective Date: $1,250,000.00. In the event the Debtors fail to pay the Secured Claim

-8-

of JPMorgan as stated herein within thirty-six (36) months of the Effective Date, the Debtors shall be in default and JPMorgan may proceed with foreclosure as set forth in subparagraph (e).

e)    In the event the Debtors do not comply with any provision of this Plan as it relates to JPMorgan, including all subparagraphs contained herein, counsel for JPMorgan shall serve upon the Debtors at both property addresses (4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois) by first class mail and the Debtors' attorney, by regular mail and by electronic mail, a fourteen (14) day notice to correct any default. In the event Debtors not cure the default prior to the expiration of the fourteen (14) day notice period, then JPMorgan shall proceed with judicial foreclosure sales for both the 4599 Hatch Lane, Lisle, Illinois and the 1374 West Grand Ave., Chicago, Illinois, properties. In the event of a default on payment of the Secured Claim of JPMorgan, either by a failure to make the monthly payments in subparagraph (a) or the failure to pay the Secured Claim according to subparagraph (d) and after the judicial sale, the Unsecured Claim shall remain due and owing and payable according to the terms of sub-paragraph (f).

f)    After payment in full of the Secured Claim of JPMorgan according to sub-paragraph (d), the balance due for the Unsecured Claim of JPMorgan shall be paid as follows: Beginning the 22nd day of the month following the payment in full of the Secured Claim of JPMorgan, the Debtors shall make monthly payments in the amount of $4,000.00 per month, due on the 22nd day of the month (without interest) until balance of the Unsecured Claim owed to JPMorgan is paid in full.

g)    **To induce JPMorgan to consent to this Plan, the Debtors waive and release and forever discharge JPMorgan and its officers, directors, attorneys, agents, and employees (the "Release Parties") from any liability, damage, claim, (including, without**

-9-

limitation, cross-claims, counterclaims, rights of setoff and recoupment), causes of action, demands, suits, costs, expenses and damages, defenses, including the defense of breach of the covenant of good faith and fair dealing, loss or expense of any kind that they may have against the Released Parties or any of them arising out of or relating to the Loan Documents, the Claim of JPMorgan or this Plan. The provisions of this section shall survive payment in full of the Claim of JPMorgan as defined herein, the termination or completion of the Plan, including without limitation, completion of foreclosure of the Properties.

CLASS 2 -Claim of Wheeler-Dealer Ltd., d/b/a Wheeler Financial, Inc./Cook County Clerk and/or DuPage County Treasurer/DuPage County Clerk.  Debtors owe over $40,000.00 to Wheeler-Dealer Ltd., d/b/a Wheeler Financial, Inc., a real estate tax purchaser, Cook County Clerk and/or DuPage County Treasurer/DuPage County Clerk, for past due real estate taxes, interest and penalties. The real estate commonly known as 1307 Burlington, Lisle, Illinois, has been placed for sale with a Real Estate Agent and shall remain for sale until sold.  Upon sale of the property, the net proceeds from the sale (defined as payment of broker's commission, real estate tax proration, usual and customary title charges, usual and customary closing costs and a reasonable attorneys' fee, not to exceed $3,000) will be used to pay the pre-petition real estate taxes currently owing for 4599 Hatch Lane, Lisle, Illinois 60532 and 1374 West Grand Avenue, Chicago, Illinois, including but limited to all amounts now owed to the Wheeler-Dealer Ltd., d/b/a Wheeler Financial, Inc./Cook County Clerk and the DuPage County Treasurer (both Cook and DuPage County) for these two parcels through 2013. Additionally, the balance of the net proceeds up to $50,000.00 shall be paid to JPMorgan as additional consideration to agree to this

-10-

Plan of Reorganization. This paragraph applies to the prepetition real estate taxes on the real

estate commonly known as 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue,

Chicago, Illinois only. This claim is impaired.

**B.     CLASS THREE- ALLOWED NON PRIORITY UNSECURED CLAIMS-**

CLASS THREE UNSECURED NON PRIORITY CLAIMS-Each Holder of Allowed Class 3

Claims which total $17,385.79 shall be paid 100% percent without interest of all Claims held by

such Holders beginning the month after plan confirmation for sixty months with a payment each

month of $289.77 pro rata. (100%)

### PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement is provided to all of the known holders of Claims against and

Interests in the Debtors. The purpose of this Disclosure Statement is to provide sufficient

information to enable a hypothetical, reasonable investor, typical of the holder of Claims which

are impaired under the Plan, to make an informed judgment about the Plan.

Unless specifically stated to be from other sources, the information contained in this

Disclosure Statement has been submitted by the Debtors. No representations concerning the

Debtors or this Plan, other than those set forth in this Disclosure Statement, have been authorized

by the Debtors.

The Debtors believe that all of the information contained in this Disclosure

Statement is accurate. However, the Debtors are unable to warrant that there are no

inaccuracies.

### CONFIRMATION OF PLAN

The Debtors are providing a copy of this Disclosure Statement to each Creditor

whose Claim has been scheduled by the Debtors or who has filed a proof of claim in the

-11-

Debtors' case. The Debtors intend that this Disclosure Statement will assist creditors
whose Claims are impaired in evaluating the Plan and in determining whether to accept
or reject the Plan. Under the Bankruptcy Code, an interested party may not solicit
acceptance of the Plan unless (a) that interested party furnishes a copy of a disclosure
statement before or concurrently with solicitation or (b) the Bankruptcy Court has
authorized the interested party to solicit votes.

A quick overview of the process for the confirmation of a reorganization plan
may be useful. For a bankruptcy court to approve a proposed reorganization plan, the
Plan's proponent must show that the Plan satisfies the 13 requirements of Section 1129
of the Bankruptcy Code, if they are applicable. They are: (1) the Plan's compliance
with Title 11, (2) the proponent's (in this case the Debtors') compliance with Title 11,
(3) the good faith proposal of the Plan, (4) the disclosure of payment, (5) the
identification of management, (6) the regulatory approval of rate changes, if applicable,
(7) the "best interest" test, (8) the unanimous acceptance by impaired classes, (9) the
treatment of administrative and Priority Claims, (10) the acceptance by at least one
impaired class of Claims, (11) the feasibility of the plan, (12) the bankruptcy fees, and
(13) retiree benefits. See Section 1129(a)(1)-(13) of the Bankruptcy Code. If, however,
a plan is not approved by all of the impaired classes, as required by Section 1129(a)(8)
of the Bankruptcy Code, it is still possible for a plan to be confirmed. If at least one the
non-insider, impaired classes of Claims approves the plan, then a plan may be
confirmed if two additional requirements are met. See 1129(a)(8) of the Bankruptcy
Code. If the Bankruptcy Court finds that all of the applicable requirements of Section
1129(a) of the Bankruptcy Code are met except for Section 1129(a)(8) of the

-12-

Bankruptcy Code and also that the plan does not discriminate unfairly between impaired classes and is fair and equitable to the rejecting classes, then the Bankruptcy Court may confirm the plan. See Section 1129(b)(1)-(2) of the Bankruptcy Code.

## EFFECT OF CONFIRMATION

The provisions of a confirmed plan bind the debtors, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtors, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtors.

Confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge upon completion of all payments under the plan.

## PERSONS ENTITLED TO VOTE ON PLAN

The Bankruptcy Court in connection with confirmation of the Plan will only count the votes of classes of creditors whose Claims are allowed and who the Debtors seeks to impair under the Plan. Generally, and subject to the specific provisions of Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will receive less than payment in full in cash of the allowed amounts of their respective Claims on the "Effective Date." The Debtors' Plan seeks to impair the Claims of certain prepetition Secured Creditors (Class 2) and Unsecured Creditors (Class 3).

Any ballot which accompanies this Disclosure Statement does not constitute a

-13-

proof of claim. If you are uncertain whether your claim has been correctly scheduled,

you may examine the Debtors' schedules which are on file with, and may be inspected

at the Office of the Clerk of the Bankruptcy Court, 219 S. Dearborn, Chicago, Illinois.

The Bankruptcy Court, at the confirmation hearing, must determine, among

other things, whether each class of creditors who's Claims are impaired by the Plan has

accepted the Plan. Under Section 1126 of the Bankruptcy Code, an impaired Class of

Claims is considered to have accepted the Plan if both a majority in number and two-

thirds (2/3) of the dollar amount of those actually voting vote to accept the Plan. The

Claims of those who do not vote are not counted in determining whether the requisite

statutory majority in number and dollar amount have voted for acceptance. Acceptance

by the statutory majority will bind the minority who dissent and those who fail to vote.

Further, unless there is unanimous acceptance of the Plan by an impaired class, the

Bankruptcy Court must also determine whether under the Plan class members will

receive property of a value, as of the effective date of the Plan, that is not less than the

amount that such class members would receive or retain, if a Chapter 7 trustee

liquidated the Debtors' property under Chapter 7 of the Bankruptcy Code on the

Effective Date of the Plan.

## SOURCES OF INFORMATION

In preparing this Disclosure Statement, counsel for the Debtors relied upon and

utilized the following:

(1) Income and Expense records;

(2) Financial records; and Estimation of the Debtors' future income and

financial information; and

-14-

(3) Discussions with the Debtors.

## HISTORY AND BACKGROUND

The Debtors are individuals who own three improved pieces of real estate and operates a food service business. This bankruptcy was caused by the lack of cash flow for a period of time caused by the down turn in the economy and falling behind on mortgage payments. The Debtors now have sufficient income to fund the Plan of Reorganization. This case was filed to stop foreclosure proceedings and to allow the Debtors to reorganize.

## POST-PETITION ACTIVITIES

On June 30, 2014, Debtors filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. During the course of this reorganization case, the Debtors continued and will continue with the business operations of their businesses.

All of the above events have enabled the Debtors to prepare the Plan. Without these events, the Debtors would have lost the pieces of real estate to a foreclosure sale.

## OTHER ASPECTS OF THE PLAN

The Debtors shall be disbursing agents under the Plan.

All executory contracts not previously assumed, assigned or rejected which exist between the Debtors and any other party, whether oral or in writing, shall be deemed assumed as of Confirmation of the Plan. Further, all of the Debtors' assets shall vest in the Debtors, upon Confirmation of the Plan, subject only to the terms and conditions of the Plan. The Debtors shall be entitled to manage their affairs and operate its business after Confirmation without further Order of the Bankruptcy Court.

The Plan is self-executing. The Debtors shall not be required to execute any newly

-15-

created documents to effectuate the terms of the Plan. The Bankruptcy Court shall retain

jurisdiction after Confirmation of the Plan of Reorganization to: (i) consider applications for fees

and allowances for professional persons; (ii) supervise the implementation of this Plan; (iii) hear

and conclude all adversary proceedings or contested matters; (iv) resolve disputes regarding

interpretation of this Plan; (v) fix expenses of administration; (vi) enter Orders to further

consummation of the Plan; (vii) approve modification of the Plan upon motions brought before

the Bankruptcy Court; (viii) consider all applications and matters pending before the Bankruptcy

Court on the date of Confirmation; (ix) hear and conclude any adversary proceedings and other

matters relating or giving rise to litigation recoveries (x) enter any order, including injunctions,

necessary to enforce title, rights and powers of the Debtors, and to impose such limitations,

restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may

deem necessary; (xi) close and or reopen this Bankruptcy Case for any appropriate purpose but

specifically to enter a Discharge and/or hold proceedings related to the Debtors' Discharge; and

(xii) enter an Order concluding and terminating this Chapter 11 case.

The provisions of the Plan shall bind all creditors, Interest holders and parties in interest.

Except as expressly provided in the Plan, no interest or penalties shall accrue or be paid to any

creditor.

## LIQUIDATION ANALYSIS

The Debtors have sufficient assets to pay all creditors in full if some or most non exempt

property is liquidated. It should be noted that the Secured Claim of JPMorgan Chase is being

paid at a discount with the remainder paid over time. This is why the Debtors are proposing a

plan that pays all creditors in full over time. The Debtors request that Creditors take this fact

into consideration when voting on the Plan. The attached comparison indicates the likely results

of a forced liquidation and shows that under the Plan creditors are getting the same such creditors

would receive in liquidation just over time instead of through a liquidation except for JPMorgan

Chase Bank, N.A.    It should be considered that a liquidation either by the Debtors or a

Chapter 7 Trustee could add a layer of costs which could if the real and personal property is sold

at a discount make all creditors not paid in full. The Debtors do not believe this is likely to

happen but this a justification to allow the Debtors to pay all creditors over time.

### MEANS FOR IMPLEMENTING THE PLAN

The Debtors intend to continue the operations of their business which, based upon

historical data, should generate a profit sufficient to pay the monies required under this Plan.

All distributions under the Plan will be made from Belle Notte and rental of real estate (until

sold) as a going concern.

### FEASIBILITY AND FAIRNESS OF PLAN

Attached to this Disclosure Statement, as an Exhibit, is a Projection of Future Income.

The Projection of Future Income is to show the anticipated cash flow. The debtors represent that

the figures shown in the operating reports are historical figures and the debtors anticipate that the

income and expenses as shown will continue. The purpose of these Reports is also to provide

creditors with projected financial information concerning the Debtors' ability to make the

payments under the Plan. These projections were prepared by the Debtors and are based upon

past history as demonstrated by the Operating Reports filed with the court. It is believed and

represented that financial history has been steady and this income and expenses are expected to

continue.

The Plan is feasible given the reasonable projections of the Debtors. These

-17-

projections clearly reflect the Debtors' ability to perform under the proposed Plan. This fact makes this Plan feasible.

The Debtors believe that this Plan represents an opportunity for the holders of Allowed Claims to receive substantially more than such claimants would receive in a forced liquidation. Given the conservative financial projections and the Debtors' performance, the Plan is also fair.

## RECOMMENDATION

The Debtors strongly recommend that those persons entitled to vote, vote to accept the Plan.

RAMON AGUIRRE AND BERTHA AGUIRRE

By: /s/Paul M. Bach
Paul M. Bach, one of his attorneys

DEBTOR' S COUNSEL:
Paul M. Bach
Penelope N. Bach
SULAIMAN LAW GROUP, LTD
900 Jorie Blvd Suite 150
Oak Brook, IL 60523
(630) 575 - 8181

-18-

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In Re:                                   )
                                         )   Chapter 11
RAMON AGUIRRE AND BERTHA                 )   Case No. 14-24420
AGUIRRE                                  )
             Debtors.                    )
                                         )
                                         )   Honorable Judge Timothy A. Barnes

### SECOND AMENDED PLAN OF REORGANIZATION

RAMON AGUIRRE AND BERTHA AGUIRRE, Debtors and Debtors-in-Possession
in this Chapter 11 Case (hereinafter "the Debtors"), by and through their Attorneys, Paul M.
Bach and Penelope N. Bach of Sulaiman Law Group, Ltd, propose the following Second
Amended Plan of Reorganization (hereinafter called "Plan" or "the Plan") in accordance with
Section 1121 (a) of the Bankruptcy Code.

This Plan is the Debtors' proposal for the Debtors' payment of the Claims of their
creditors as of the Petition Date.

The Debtors, by this Plan, solicit the acceptances of all creditors whose claims are
Impaired. The Debtors believe that acceptance of this Plan would be in the best interest of the
Debtors' creditors. THE DEBTORS URGE ALL CREDITORS TO ACCEPT THIS PLAN.
PREAMBLE

The Debtors filed their voluntary petition for relief pursuant to Chapter 11 of the
Bankruptcy Code on June 30, 2014. The Debtors have operated their businesses (Food Service
including catering and sit down service through R.G. Restaurant, Inc. d/b/a Bella Notte ("Bella
Notte") and rental of real estate) and managed their financial affairs as Debtors-in-Possession
since the inception of this reorganization case pursuant to Sections 1101 and 1107 of the

-1-

Bankruptcy Code. No trustee, examiner or committee of unsecured creditors has been appointed

to serve in this Chapter 11 case.

The Debtors are the proponents and disbursing agents of this Plan. This Plan provides for

distributions to the holders of allowed claims from the continued operation of Bella Notte and

rental real estate.

The Debtors are currently the owners of three parcels or real estate. Below is information

and the debt structure for each parcel of real estate:

**4599 Hatch Lane, Lisle, Illinois** - This parcel is the Debtors' home and residence. There is one
lien on this parcel which is cross-collateralized with 1374 West Grand Avenue, Chicago, Illinois.
The first line is in favor of JPMorgan Chase Bank, N.A. (Proof of Claim 4) in the amount of
$1,415,540.24. The Debtors value this parcel of real estate at $450,000.00.

**1374 West Grand Avenue, Chicago, Illinois** - This parcel is a commercial property which is
used by Bella Notte. There is one lien on this parcel which is cross-collateralized with 4599
Hatch Lane, Lisle, Illinois. The first line is in favor of JPMorgan Chase Bank, N.A. (Proof of
Claim 4) in the amount of $1,415,540.24. The Debtors value this parcel of real estate at
$450,000.00. The Debtors owe $40,000 in back taxes on this parcel to Wheeler-Dealer Ltd.
d/b/a Wheeler Financial, Inc.

**1307 Burlington, Lisle, Illinois** - This parcel is a rental unit which presently rented producing
$1,100.00 in gross income per month. There is no lien on this property. This parcel has been
presently placed for sale with a Real Estate Agent. Upon sale the proceeds will be used to pay
all real estates taxes currently owing for 4599 Hatch Lane, Lisle, Illinois 60532 and/or 1374
West Grand Avenue, Chicago, Illinois including but limited to all amounts now owed to the
County Treasurer/County Clerk for these two parcels through 2013. Additionally, the remaining
amount up to $50,000.00 will be paid to JPMorgan Chase Bank, N.A. as additional consideration
to agree to this Plan of Reorganization.

## SUMMARY OF PLAN OF REORGANIZATION
## AS TO INDIVIDUAL SECURED CREDITORS

In Summary, and as stated in detail below, the Debtors own three improved parcels of

real estate. The Debtors' Plan contains but is not limited to the following provisions:

**JPMorgan Chase Bank, N.A.** - (Class 1) - As stated in the property description above,
JPMorgan Chase Bank, N.A. holds a first priority mortgage on 4599 Hatch Lane, Lisle, Illinois
60532 and 1374 West Grand Avenue, Chicago, Illinois. The Debtors shall pay JPMorgan Chase
Bank, N.A. $8,000.00 per month and will pay off the claim of JPMorgan Chase within thirty-six

-2-

Case 14-24420    Doc 75    Filed 02/23/15    Entered 02/23/15 12:55:16    Desc Main

Document    Page 27 of 51
Case 14-24420    Doc 70-1    Filed 02/10/15    Entered 02/10/15 16:26:44    Desc Second
Amended Plan of Reorganization    Page 3 of 14

(36) months via amounts stated below (For details see description for Class 1). Insurance and real estate taxes are to be paid by the Debtors directly.

**County Treasurer/County Clerk and/or Tax Purchaser** - The Debtors owe pre petition real estate taxes for the real estate commonly known as 4599 Hatch Lane, Lisle, Illinois 60532 and 1374 West Grand Avenue, Chicago, Illinois. The Debtors shall list the 1307 Burlington, Lisle, Illinois, property for sale and use the net proceeds to pay pre-petition real estate taxes. As to 1374 West Grand Avenue, Chicago, Illinois, the Debtors owe approximately $40,000.00 for pre-petition taxes to Wheeler-Dealer Ltd. d/b/a Wheeler Financial, Inc. and Cook County. As to 4599 Hatch Lane, Lisle, Illinois the Debtors owe $5,600.00 for the First Installment of 2013 to the County of DuPage County. Both of these amounts shall be paid at the time of sale of 1307 Burlington, Lisle, Illinois.

**Unsecured Non Priority Creditors** - The Debtors are paying holders of Unsecured Non Priority Claims at total of $17,385.79 (100%) or $289.77 a month for seventy-three months (Class 3).

For a complete discussion of the mechanics of this Plan, the reader's attention is directed

to the Disclosure Statement filed by the Debtors in connection with this Plan.

## ARTICLE I DEFINITIONS

The following terms, when used herein, shall have the meaning specified below, unless

the context otherwise requires:

1.1 Administrative Expense: A cost or expense of administration of this Chapter 11 case,

including any actual and necessary expense of preserving or liquidating the estate, or of

operating the business of the Debtors and all allowances approved by the Bankruptcy Court in

accordance with applicable provisions of the Bankruptcy Code.

1.2 Allowed Claim: A claim (i) a proof of which is filed within the time fixed by the Bankruptcy

Court or applicable rules or statutes, and with respect to which no objection has been timely filed

by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtors as liquidated in

amount and not disputed or contingent, or (iii) that has been allowed by Order of this Court, or

(iv) that is allowed by the provisions of this Plan.

1.3 Allowed Interest: An "Interest" (as defined below) (i) proof of which has been filed within

-3-

the time fixed by the Bankruptcy Rules or within the time fixed by the Bankruptcy Court; or (ii)

that has been scheduled in the list of equity security holders prepared and filed with the

Bankruptcy Court; and (iii) that has been allowed by Order of this Court, or (iv) that is allowed

by the provisions of this Plan.

1.4 Bankruptcy Code: Title 11 of the United States Code, Section 101 et seq., as amended.

1.5 Bankruptcy Court: The United States Bankruptcy Court for the Northern District of Illinois,
Eastern Division.

1.6 Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure as prescribed by the Supreme
Court of the United States.

1.7 Chapter 11: Chapter 11 of the United States Bankruptcy Code.

1.8 Claim: The term "Claim" shall have the meaning set forth in Section 101(5) of the
Bankruptcy Code.

1.9 Confirmation: The entry by the Bankruptcy Court of a Final Order confirming the Plan in
accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.10 Debtors: RAMON AGUIRRE AND BERTHA AGUIRRE

1.11 Debtors in Possession: RAMON AGUIRRE AND BERTHA AGUIRRE

1.12 Effective Date: Thirty (30) days following the entry of a Final Order confirming this Plan.

1.13 Final Order: (a) an order or a judgment that has not been reversed, stayed, modified or

amended, and as to which the time to appeal or seek reargument, reconsideration or rehearing

has expired and has not been extended and as to which no appeal, petition for certiorari,

reargument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an

appeal, reargument, reconsideration, rehearing or certiorari has been sought, and as to which the

order or judgment has been affirmed or the request for reargument, reconsideration, rehearing or

-4-

certiorari has been denied, and the time to take any further appeal, reargument, reconsideration,

rehearing or certiorari has expired, so that in the event of either (i) or (ii), such order or judgment

shall have become final and non-appealable in accordance with applicable law.

1.14    Late Filed Claims: A claim for which the claimant filed a proof of claim after the

deadline set by the Court for filing proofs of claim.

1.15    Month: A calendar month, including the month in which a date or event occurs.

1.16    Plan: This Plan of Reorganization including any amendments or modifications thereto.

1.17    Pro-rata: With respect to any distribution on account of any claim or matter, in the same

proportion as the amount of such claim or matter bears to the aggregate amount of all claims or

matters of its class.

1.18    Unless otherwise defined, the words and phrases used herein shall have the meanings

ascribed in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 Allowed Claims against and Allowed Interests in the Debtors in this estate shall be

fixed and determined as of the Petition Date and are classified as follows:

Administrative Expenses

Class One - JPMorgan Chase Bank, N.A.

Class Two- Allowed Real Estate Tax Claims for 4599 Hatch Lane, Lisle, Illinois and

1374 West Grand Avenue, Chicago, Illinois.

Class Three - Allowed General Non Priority Unsecured Claims.

2.2 Resolution of Disputes: Disputes regarding the proper classification of Claims shall

be resolved pursuant to the procedures established in the Bankruptcy Code, the Rules and other

applicable laws. The Court shall have exclusive jurisdiction over disputes concerning the

-5-

classification of claims. Resolution of any such disputes shall not be a condition precedent to
Confirmation or Consummation of the Plan.

2.3 A Claim or Interest is classified in a particular Class only to extent that the Claim or
Interest qualifies within the description of that Class.

2.4 Distributions of Disputed Claims: Payments and distributions to each holder of a
Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the
provisions of this Plan with respect to the Class of Creditors to which the respective holder of an
allowed Claim belongs. Such payments and distributions shall be made as soon as practicable
after the date that the order or judgment allowing such Claim is a Final Order.

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

### 3.1 TREATMENT OF UNIMPAIRED CLAIMS

The following class(es) are unimpaired by the Plan in accordance with Section 1124 of the
Bankruptcy Code or are not required to be classified in this Plan of Reorganization under
provisions of the Bankruptcy Code

**Administrative Expenses** These claimants represent claims arising post-petition. Any
Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtors, in
full, in cash or as otherwise agreed. Payment of Professional Fees shall be subject to the
provisions of Section 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the
Plan. United States Trustee and bankruptcy attorney fees shall be paid in full on or before the
Effective Date or as they come due thereafter. The source of payment for these amounts will be
the Debtors' income from operations and from employment. The Debtors expect Administrative
Claims will be approximately $60,000.00 as of the Effective date.

-6-

### 3.2 TREATMENT OF IMPAIRED CLAIMS

The claims in the Classes listed below are impaired by the Plan:

#### A. Class Two-ALLOWED SECURED CLAIMS THAT ARE IMPAIRED

Allowed Secured Claims that are impaired include each Allowed Secured Claim held by a Creditor that the Debtors were not current and in default with on the Petition date relating to real estate that is secured by one or more of the Debtors' Assets and is not disputed, contingent or unliquidated and allowed as of the effective date. Each creditor shall be paid as stated in the detail under each claim.

CLASS 1-JPMorgan Chase Bank, N.A. (hereinafter called "JPMorgan") as to 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois 606042. JPMorgan holds a perfected, first priority security interest on the Debtors' real estate commonly known as 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois. JPMorgan holds an allowed claim in the amount of $1,415,540.24 (the "Claim of JPMorgan"). Debtors shall make the following payments relating to the Claim of JPMorgan:

a)      Debtors shall pay the sum of $8,000.00 per month on the 22nd day of each month to JPMorgan until the amounts provided below are paid to JPMorgan to release its mortgages are paid in accordance with subparagraph (d) (this is an extension of the Adequate Protection Order previously entered by this Court on September 18, 2014 as Docket 52). JPMorgan may be prepaid without penalty by the date and in the amounts stated below in accordance with the timing and the terms of subparagraph (d) (the "Secured Claim"). Once JPMorgan's Secured Claim has been paid in accordance with the terms of subparagraph (d), JPMorgan shall cause to release, its liens, mortgages and security interest. JPMorgan's Secured Claim is impaired under the Plan. All remaining terms of the original note and mortgages that are not inconsistent with

-7-

this section shall remain in full force and effect and JPMorgan's Secured Claim shall remain perfected and in full force and effect to the same nature and extend as its pre-petition security interest, except as provided herein.

b)    Debtors shall keep the 4599 Hatch Lane, Lisle, Illinois and the 1374 West Grand Avenue, Chicago, Illinois properties insured against loss or damage resulting from fire, flood or other hazards, casualties and contingencies with replacement cost endorsements (without depreciation) in such reasonable amounts as approved by JPMorgan and with JPMorgan named as the loss payee, so as long as the Debtors are the owners of the properties.

c)    Debtors shall pay directly, all post-petition taxes, personal and real property taxes, assessments and governmental and other charges, levied or imposed, which are, or which if unpaid might become, a lien or charge upon 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois.

d)    Debtors may pay and JPMorgan shall accept as payment of the Secured Claim of JPMorgan, the following payments:   1)   On or before six (6) months after the Effective Date: $1,000,000.00; 2) On or before twelve (12) months after the Effective Date: $1,050,000.00; 3) On or before eighteen (18) months after the Effective Date: $1,100,000.00; 4) On or before twenty-four (24) months after the Effective Date: $1,150,000.00; 5) On or before thirty (30) months after the Effective Date: $1,200,000.00; and 6) On or before thirty-six (36) months after the Effective Date: $1,250,000.00. In the event the Debtors fail to pay the Secured Claim of JPMorgan as stated herein within thirty-six (36) months of the Effective Date, the Debtors shall be in default and JPMorgan may proceed with foreclosure as set forth in subparagraph (e).

e)    In the event the Debtors do not comply with any provision of this Plan as it relates to JPMorgan, including all subparagraphs contained herein, counsel for JPMorgan shall serve

-8-

upon the Debtors at both property addresses (4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois) by first class mail and the Debtors' attorney, by regular mail and by electronic mail, a fourteen (14) day notice to correct any default. In the event Debtors not cure the default prior to the expiration of the fourteen (14) day notice period, then JPMorgan shall proceed with judicial foreclosure sales for both the 4599 Hatch Lane, Lisle, Illinois and the 1374 West Grand Ave., Chicago, Illinois, properties. In the event of a default on payment of the Secured Claim of JPMorgan, either by a failure to make the monthly payments in subparagraph (a) or the failure to pay the Secured Claim according to subparagraph (d) and after the judicial sale, the Unsecured Claim shall remain due and owing and payable according to the terms of sub-paragraph (f).

f)    After payment in full of the Secured Claim of JPMorgan according to sub-paragraph (d), the balance due for the Unsecured Claim of JPMorgan shall be paid as follows: Beginning the 22nd day of the month following the payment in full of the Secured Claim of JPMorgan, the Debtors shall make monthly payments in the amount of $4,000.00 per month, due on the 22nd day of the month (without interest) until balance of the Unsecured Claim owed to JPMorgan is paid in full.

g)    **To induce JPMorgan to consent to this Plan, the Debtors waive and release and forever discharge JPMorgan and its officers, directors, attorneys, agents, and employees (the "Release Parties") from any liability, damage, claim, (including, without limitation, cross-claims, counterclaims, rights of setoff and recoupment), causes of action, demands, suits, costs, expenses and damages, defenses, including the defense of breach of the covenant of good faith and fair dealing, loss or expense of any kind that they may have against the Released Parties or any of them arising out of or relating to the Loan Documents, the Claim of**

-9-

JPMorgan or this Plan. The provisions of this section shall survive payment in full of the Claim of JPMorgan as defined herein, the termination or completion of the Plan, including without limitation, completion of foreclosure of the Properties.

CLASS 2 -Claim of Wheeler-Dealer Ltd., d/b/a Wheeler Financial, Inc./Cook County Clerk and/or DuPage County Treasurer/DuPage County Clerk. Debtors owe over $40,000 to Wheeler-Dealer Ltd., d/b/a Wheeler Financial, Inc., a real estate tax purchaser, Cook County Clerk and/or DuPage County Treasurer/DuPage County Clerk, for past due real estate taxes, interest and penalties. The real estate commonly known as 1307 Burlington, Lisle, Illinois, has been placed for sale with a Real Estate Agent and shall remain for sale until sold. Upon sale of the property, the net proceeds from the sale (defined as payment of broker's commission, real estate tax prorations, usual and customary title charges, usual and customary closing costs and a reasonable attorneys' fee, not to exceed $3,000) will be used to pay the pre-petition real estate taxes currently owing for 4599 Hatch Lane, Lisle, Illinois 60532 and 1374 West Grand Avenue, Chicago, Illinois, including but limited to all amounts now owed to the Wheeler-Dealer Ltd., d/b/a Wheeler Financial, Inc./Cook County Clerk and the DuPage County Treasurer (both Cook and DuPage County) for these two parcels through 2013. Additionally, the balance of the net proceeds up to $50,000.00 shall be paid to JPMorgan as additional consideration to agree to this Plan of Reorganization. This paragraph applies to the prepetition real estate taxes on the real estate commonly known as 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois only. This claim is impaired.

**B.     CLASS THREE- ALLOWED NON PRIORITY UNSECURED CLAIMS-**

-10-

CLASS THREE UNSECURED NON PRIORITY CLAIMS-Each Holder of Allowed Class 3

Claims which total $17,385.79 shall be paid 100% percent without interest of all Claims held by

such Holders beginning the month after plan confirmation for sixty months with a payment each

month of $289.77 pro rata. (100%)

## ARTICLE IV IMPLEMENTATION OF PLAN

4.1 All of the assets of the Debtors and this estate shall vest in the Debtors upon

Confirmation of the Plan subject only to the terms and conditions of this Plan.

4.2 Debtors shall be entitled to manage their affairs without further Order of this Court.

4.3 Upon Confirmation, the Confirmed Plan shall become a binding agreement between

the Debtors and his creditors, superseding all pre-petition obligations of the Debtors to his

Creditors. So long as Debtors act in accordance with the Plan terms, Creditors shall have no right

of action (including but not limited to proceeding with a foreclosure sale and other State Court

rights) against Debtors to pursue Debtors for payment and Creditors are enjoined and prohibited

from taking such action. Any such action by a Creditor violating this paragraph shall give the

Debtors a Cause of Action against such Creditor for Damages which shall be determined just as

Damages are computed and allowed for a Violation of the Automatic Stay/Discharge

Injunction/Confirmation Order.

4.4 This Plan is self-executing. The Debtors shall not be required to execute any newly

created documents to evidence the claims, liens or terms of repayment to the holder of any

Allowed Claim. Furthermore, upon the completion of the payments required under this Plan to

the holders of Allowed Claims, such Claims and any liens that may support such Claims shall be

deemed released and discharged.

## ARTICLE V EXECUTORY CONTRACTS

-11-

Case 14-24420    Doc 75    Filed 02/23/15    Entered 02/23/15 12:55:16    Desc Main
                        Document       Page 36 of 51
Case 14-24420    Doc 70-1    Filed 02/10/15    Entered 02/10/15 16:26:44    Desc Second
                Amended Plan of Reorganization    Page 12 of 14

5.1 All executory contracts and unexpired leases which exist between the Debtors and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned or rejected by the Debtors shall be deemed assumed by the Debtors as of the Confirmation of this Plan. Any security deposits held as security for tenants of the Debtors shall not be affected by this Plan of Reorganization.

## ARTICLE VI
## COURT'S RETENTION OF JURISDICTION

6.1 The Bankruptcy Court shall retain jurisdiction after Confirmation to: (i) consider applications for fees and allowances for professional persons; (ii) supervise the implementation of this Plan; (iii) hear and conclude all adversary proceedings or contested matters; (iv) resolve disputes regarding interpretation of this Plan; (v) fix expenses of administration; (vi) enter Orders to further consummation of the Plan; (vii) approve modification of the Plan upon motions brought before the Bankruptcy Court; (viii) consider all applications and matters pending before the Bankruptcy Court on the date of Confirmation; (ix) hear and conclude any adversary proceedings and other matters relating or giving rise to litigation recoveries (x) enter any order, including injunctions, necessary to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary; (xi) close and or reopen this Bankruptcy Case for any appropriate purpose but specifically to enter a Discharge and/or hold proceedings related to the Debtors' Discharge; and (xii) enter an Order concluding and terminating this Chapter 11 case.

## ARTICLE VII
## CONFIRMATION OF PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE

7.1 The Debtors reserve the right, pursuant to Section 1129(b) of the Bankruptcy Code, to request the Bankruptcy Court to confirm the Plan if all applicable requirements of Section 1129

-12-

(a) of the Bankruptcy Code, other than Section 1129(a) (8), are met.

## ARTICLE VIII
## UNCLAIMED PROPERTY

8.1 In the event that any distribution made by the Debtors under this Plan remains

unclaimed ninety (90) days after such distribution is made, this distribution will become property

of the Debtors and shall not be recouped in subsequent distributions. After expiration of the

ninety (90) day period set forth herein, the claimant whose funds remain unclaimed shall forfeit

any and all legal and equitable right to such distribution and the proceeds thereof.

## ARTICLE IX
## INVALIDATION OF LIENS AND DISCHARGE

9.1 The provisions of the confirmed Plan shall bind all creditors and other parties in

interest, whether or not such persons accept the Plan. The distributions provided under the Plan

shall be in exchange for and in complete satisfaction and release of all Claims against any of the

assets or properties of the Debtors. Unless otherwise specifically provided to the contrary herein

or in the Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded

from asserting any Claim against the Debtors.

## ARTICLE X
## INTEREST AND PENALTIES

10.1 Except as otherwise provided herein, or required by the Bankruptcy Code, no

interest or penalties accruing on or after June 30, 2014, shall be paid on any Allowed Claim nor

shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest

or penalty allowed for payment pursuant to the Plan.

## ARTICLE XI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

11.01 Disputed Claim. A disputed claim is a claim that has not been allowed or

-13-

disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been

filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no

proof of claim has been filed, and the Debtors has scheduled such claim as disputed, contingent,

or unliquidated.

11.02 Delay of Distribution on a Disputed Claim. No distribution will be made on

account of a disputed claim unless such claim is allowed [by a final non-appealable order].

11.03 Settlement of Disputed Claims. The Debtors will have the power and authority to

settle and compromise a disputed claim with court approval and compliance with Rule 9019 of

the Federal Rules of Bankruptcy Procedure.

## ARTICLE XII
## DISCHARGE

12.01.Discharge. Confirmation of this Plan does not discharge any debt provided for in

this Plan until the court grants a discharge on completion of all payments under this Plan in Class

Three, or as otherwise provided in § 1141(d)(5) of the Code.

RAMON AGUIRRE AND BERTHA AGUIRRE

By: /s/Paul M. Bach
Paul M. Bach, one of their attorneys

DEBTOR' S COUNSEL:
Paul M. Bach
Penelope N. Bach
SULAIMAN LAW GROUP, LTD
900 Jorie Blvd Suite 150
Oak Brook, IL 60523
(630) 575 - 8181

-14-

Rehmann Robson Agtvre
Creditor List
Exhibit 5

| Creditor | Claim Class | Secured/Priority/Unsecured | Amount of Allowed Claim |
|---|---|---|---|
| AES / Wells Fargo, American Education Services, 1200 N. 7th Street, Harrisburg, PA 17102 | | | $0.00 |
| Bank Of America, N.A., PO Box 982235, El Paso, TX 79998 | | | $0.00 |
| Capital One Bank, Attn: Bankruptcy Dept., PO Box 30285, Salt Lake City, UT 84130 | 3 | Unsecured | $59,445.00 |
| Capital One Bank, Attn: Bankruptcy Dept., PO Box 30285, Salt Lake City, UT 84130 | 3 | Unsecured | $5,477.00 |
| Citibank, Attn: Bankruptcy Dept, PO Box 20507, Kansas City, MO 64195 | | | $0.00 |
| Discover Bank, DB Servicing Corporation, PO Box 3025, New Albany, OH 43054-3025 | 3 | Unsecured | $3,345.55 |
| Dupage County Treasurer's Office, Dupage County Clerk's Atty Office, c/o Barbara O. Reynolds, 503 N County Farm Road, Wheaton, IL 60187 | 2 | Secured | $10,694.54 |
| JPMorgan Chase Bank, N.A., c/o James Newman, Newman Osberg LLP, 55 E. Monroe Street, 37th floor, Chicago, IL 60603 | 1 | Secured | 1,415,541.26 |
| Missouri Student Loan Program Inc, PO Box 411517, Lincoln, NE 68521 | 2 | Unsecured | $6,254.24 |
| NavStone FSB, Attention Account Services, PO Box 6586, Englewood, CO 80155 | | | $0.00 |

Liquidation Analysis

Ramon and Bertha Aguirre

| Real Property | Fair Market Value | Principle Balance | Costs of Liquidation | Exemptions | Liquidated Value |
|---|---|---|---|---|---|
| 4399 Maple Lane, Lisle, IL 60532 | $340,000.00 | $141,654.02 | $328,900.00 | $30,000.00 | $0.00 |
| 1374 West Grand Avenue, Chicago, IL 60642 | $440,000.00 | | $34,900.00 | | $0.00 |
| | $380,000.00 | | $18,100.00 | | $141,900.00 |
| Personal Property | | | | | |
| Cash | $100.00 | | $0.00 | $100.00 | $0.00 |
| Bank Savings/Checking account | $450.00 | | $0.00 | $2,320.00 | $0.00 |
| Chase - Debtor in Possession account from previous car | $2,000.00 | | $0.00 | $170.00 | $1,830.00 |
| Household Goods and Furnishings | $5,000.00 | | $500.00 | $5,000.00 | $0.00 |
| Wearing Apparel | $1,500.00 | | $300.00 | $1,500.00 | $0.00 |
| Furs and ... | $500.00 | | $133.00 | $300.00 | $0.00 |
| Misc Jewelry | $1,000.00 | | $200.00 | $300.00 | $500.00 |
| Machinery/equipment/inventory | $160,000.00 | | $52,800.00 | $3,200.00 | $107,200.00 |
| Computer desk, personal computer, fax machine | $325.00 | | $25.00 | $300.00 | $0.00 |
| Truck and Misc./Inventory/Work Material | $2,710.00 | | $405.00 | | $2,295.00 |

Net Value Real Estate $141,900.00
Net Value Personal Property $112,125.00
Net Liquidation Value $254,025.00

R.G. RESTAURANT, INC.
D/B/A BELLA NOTTE

* * *

REPORT ON COMPILATION OF FINANCIAL STATEMENTS
INCOME TAX BASIS

FOR THE MONTH ENDED AND THE ELEVEN MONTHS
NOVEMBER 30, 2014 AND 2013

* * *

*GRIECO KURTZKE & ADELMAN LLC*
CERTIFIED PUBLIC ACCOUNTANTS
DES PLAINES, IL 60018

R.G. RESTAURANT, INC.

D/B/A BELLA NOTTE

FOR THE MONTH ENDED AND THE ELEVEN MONTHS ENDED
NOVEMBER 30, 2014 AND 2013

Page

Accountant's compilation report                                                    1

Statements of assets, liabilities and equity – income tax basis                    2

Statements of revenues, expenses and retained earnings – income tax basis          3

Supplemental information:

Schedules of operating expenses – income tax basis                                 4

# Grieco Kurtzke & Adelman LLC

(847) 635-0723
(847) 635-0882 FAX
WWW.GKACPAS.COM

**CERTIFIED PUBLIC ACCOUNTANTS**

2880 S. RIVER ROAD, SUITE 350   DES PLAINES, ILLINOIS 60018

JGRIECO@GKACPAS.COM
DKURTZKE@GKACPAS.COM
AADELMAN@GKACPAS.COM

V. JAMES GRIECO, CPA
DEBORAH L. KURTZKE, CPA, MST
ANN C. ADELMAN, CPA

**MEMBERS**
AMERICAN INSTITUTE OF
CERTIFIED PUBLIC ACCOUNTANTS
ILLINOIS SOCIETY OF
CERTIFIED PUBLIC ACCOUNTANTS

Accountant's Compilation Report

R. G. Restaurant, Inc.
D/B/A Bella Notte

We have compiled the accompanying statements of assets, liabilities, and equity - income tax basis of   R. G.
Restaurant, Inc., D/B/A Bella Notte (an S corporation) as of November 30, 2014 and 2013, and the related
statements of revenues, expenses, and retained earnings - income tax basis  for the month ended and the eleven
months then ended. We have not audited or reviewed the accompanying financial statements and, accordingly, do
not express an opinion or provide any assurance about whether the financial statements are in accordance with
the income tax basis of accounting.

Management is responsible for the preparation and fair presentation of the financial statements in accordance
with the income tax basis of accounting and for designing, implementing, and maintaining internal control relevant
to the preparation and fair presentation of the financial statements.

Our responsibility is to conduct the compilation in accordance with Statements on Standards for Accounting and
Review Services issued by the American Institute of Certified Public Accountants. The objective of a compilation
is to assist management in presenting financial information in the form of financial statements without undertaking
to obtain or provide any assurance that there are no material modifications that should be made to the financial
statements.

Management has elected to omit substantially all of the disclosures ordinarily included in financial statements
prepared on the income tax basis of accounting. If the omitted disclosures were included in the financial
statements, they might influence the user's conclusions about the Company's assets, liabilities, equity, revenues,
and expenses. Accordingly, these financial statements are not designed for those who are not informed about
such matters.

The supplementary information - income tax basis contained on page 4 is presented for purposes of additional
analysis and is not a required part of the basic financial statements. The supplementary information has been
compiled from information that is the representation of management. We have not audited or reviewed the
supplementary information and, accordingly, do not express an opinion or provide any assurance on such
supplementary information.

The Company, with consent of its shareholder, has elected under the Internal Revenue Code to be an S
corporation. In lieu of corporation income taxes, the shareholders of an S corporation are taxed on their
proportionate share of the Company's taxable income. Therefore, no provision or liability for federal income taxes
has been included in these financial statements.

Grieco Kurtzke & Adelman LLC

January 5, 2015

R.G. RESTAURANT, INC.,
D/B/A BELLA NOTTE

STATEMENTS OF ASSETS, LIABILITIES AND EQUITY
INCOME TAX BASIS

NOVEMBER 30, 2014 AND 2013
(See Accountant's Compilation Report)

## ASSETS

| | 2014 | 2013 |
|---|---|---|
| Current assets: | | |
| Cash in banks | $ 73,522.58 | $ 130,548.95 |
| Accounts receivable – trade and others | 2,124.45 | 1,633.03 |
| Inventory | 35,000.00 | 70,000.00 |
| Other current assets | 32,000.00 | 28,000.00 |
| Total current assets | 142,647.03 | 230,181.98 |
| | | |
| Fixed assets: | | |
| Furniture & Fixtures | 116,778.18 | 116,778.18 |
| Equipment | 303,248.51 | 303,248.51 |
| Leasehold improvements | 190,247.28 | 190,247.28 |
| Accumulated depreciation | (551,602.36) | (536,506.15) |
| Net fixed assets | 58,668.57 | 73,764.80 |
| | | |
| Total assets | $ 201,315.60 | $ 303,946.78 |

## LIABILITIES AND STOCKHOLDER'S EQUITY

| | | |
|---|---|---|
| Current liabilities: | | |
| Accrued liabilities | $ 11,236.00 | $ 11,777.00 |
| Total current liabilities | 11,236.00 | 11,777.00 |
| | | |
| Long-term liabilities: | | |
| Loan from stockholder | 25,845.65 | 34,971.65 |
| Total long-term liabilities | 25,845.65 | 34,971.65 |
| | | |
| Stockholder's equity: | | |
| Common stock, no par value, 1000 | | |
| authorized, 1,000 issued and outstanding | 1,000.00 | 1,000.00 |
| Retained earnings | 163,233.95 | 256,198.13 |
| Total stockholder's equity | 164,233.95 | 257,198.13 |
| | | |
| Total liabilities and stockholder's equity | $ 201,315.60 | $ 303,946.78 |

See Accountant's Compilation Report.

R.G. RESTAURANT, INC.
D/B/A BELLA NOTTE

STATEMENTS OF REVENUES, EXPENSES
AND RETAINED EARNINGS - INCOME TAX BASIS

FOR THE MONTH ENDED AND THE ELEVEN MONTHS ENDED
NOVEMBER 30, 2014 AND 2013

| | MONTH ENDED NOV. 30, 2014 | MONTH ENDED NOV. 30, 2013 | VARIANCE | ELEVEN MONTHS ENDED NOV. 30, 2014 | ELEVEN MONTHS ENDED NOV. 30, 2013 | VARIANCE |
|---|---|---|---|---|---|---|
| Revenues: | | | | | | |
| Sales | $ 127,800.65 | $ 127,954.41 | (153.76) | $ 1,155,535.04 | $ 1,149,074.80 | $ 6,460.24 |
| Less: sales tax | (11,236.00) | (11,777.00) | 541.00 | (105,038.00) | (107,070.00) | 2,032.00 |
| Net sales | 116,564.65 | 116,177.41 | 387.24 | 1,050,497.04 | 1,042,004.80 | 8,492.24 |
| Cost of sales | 42,427.90 | 59,989.06 | (17,561.16) | 484,200.13 | 458,131.80 | 26,068.33 |
| Gross profit | 74,138.75 | 56,188.35 | 17,948.40 | 565,296.91 | 583,873.00 | (17,576.09) |
| Operating expenses | 43,482.37 | 44,480.69 | (998.32) | 518,112.50 | 507,080.54 | 12,031.96 |
| Net income/(loss) before other income/(expense) | 30,654.38 | 11,707.66 | 18,946.72 | 47,184.41 | 76,792.46 | (29,608.05) |
| Other income/(expense): | | | | | | |
| Other income | 0.00 | 1,200.75 | (1,200.75) | 897.23 | (62.49) | 979.72 |
| Penalties and fines | 0.00 | (359.86) | 359.86 | (297.00) | (949.86) | (652.86) |
| Other expense | (33,521.97) | (3,705.89) | (28,816.28) | (71,208.24) | (66,369.79) | 4,838.45 |
| Total other income/(expense) | (33,521.97) | (2,864.80) | (30,657.17) | (70,608.01) | (67,402.14) | (3,205.87) |
| Net income/(loss) before provision for income taxes | (2,867.59) | 8,842.86 | (11,710.45) | (23,423.60) | 9,390.32 | (32,813.92) |
| Provision for state income tax | 0.00 | 0.00 | 0.00 | 377.00 | 0.00 | 377.00 |
| Net income/(loss) | (2,867.59) | 8,842.86 | (11,710.45) | (23,800.60) | 9,390.32 | (33,190.92) |
| Retained earnings/(deficit) beginning of period | 186,101.64 | 247,355.27 | (61,253.73) | 187,034.55 | 246,807.81 | (59,773.26) |
| Dividends paid | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Retained earnings/(deficit) end of period | $ 183,233.95 | $ 256,198.13 | $ (92,964.18) | $ 163,233.95 | $ 256,198.13 | $ (92,964.18) |

See Accountant's Compilation Report.

3.

R.G. RESTAURANT, INC.
D/B/A BELLA NOTTE

SCHEDULES OF OPERATING EXPENSES
INCOME TAX BASIS

FOR THE MONTH ENDED AND THE ELEVEN MONTHS ENDED
NOVEMBER 30, 2014 AND 2013

| | MONTH ENDED NOV. 30, 2014 | MONTH ENDED NOV. 30, 2013 | VARIANCE | ELEVEN MONTHS ENDED NOV. 30, 2014 | ELEVEN MONTHS ENDED NOV. 30, 2013 | VARIANCE |
|---|---|---|---|---|---|---|
| Operating expenses: | | | | | | |
| Accounting Services | $ 0.00 | $ 0.00 | $ 0.00 | $ 9,000.00 | $ 2,000.00 | $ 7,000.00 |
| Advertising | 1,233.17 | 0.00 | 1,233.17 | 8,342.67 | 1,325.00 | 7,017.67 |
| Automobile Expenses | 0.00 | 0.00 | 0.00 | 95.44 | 0.00 | 95.44 |
| Alarm | 264.00 | 0.00 | 264.00 | 577.11 | 0.00 | 577.11 |
| Bank Charges | 35.00 | 200.53 | (165.53) | 2,682.06 | 3,525.91 | (843.85) |
| Casual Labor | 0.00 | 0.00 | 0.00 | 464.00 | 0.00 | 464.00 |
| Credit card fees | 3,603.95 | 4,604.05 | (1,000.10) | 23,400.02 | 35,535.37 | (12,137.55) |
| Charitable contributions | 0.00 | 0.00 | 0.00 | 110.95 | 0.00 | 110.95 |
| Computer/internet | 0.00 | 0.00 | 0.00 | 0.00 | 82.31 | (82.31) |
| Depreciation | 1,258.00 | 1,258.03 | (0.03) | 13,838.22 | 13,838.22 | 0.00 |
| Dues and subscriptions | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| Exterminating | 141.84 | 141.84 | 0.00 | 1,418.40 | 1,702.08 | (283.68) |
| Garbage | 641.51 | 502.00 | 139.51 | 5,451.04 | 5,217.38 | 233.85 |
| Insurance | 1,530.94 | 1,321.85 | 209.09 | 13,723.69 | 13,074.43 | 649.23 |
| Laundry and cleaning | 989.77 | 1,199.83 | (210.06) | 11,062.62 | 14,273.25 | (3,210.63) |
| Legal and professional | 0.00 | 0.00 | 0.00 | 4,755.21 | 5,000.00 | (244.79) |
| License and permits | 0.00 | 50.00 | (50.00) | 1,460.00 | 1,800.00 | (340.00) |
| Maintenance | 0.00 | 617.00 | (617.00) | 2,550.00 | 1,887.00 | 663.00 |
| Office | 282.98 | 0.00 | 282.98 | 806.53 | 340.00 | 466.53 |
| FICA taxes | 2,704.95 | 2,898.50 | (193.55) | 32,978.49 | 31,624.29 | 1,354.20 |
| SUTA taxes | 285.77 | 387.52 | (101.75) | 7,207.19 | 11,953.88 | (4,746.69) |
| FUTA taxes | 32.74 | 0.39 | 32.35 | 957.39 | 808.93 | 148.46 |
| Payroll service | 233.11 | 228.72 | 4.39 | 2,797.93 | 2,882.49 | (64.56) |
| Franchise tax | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 | (100.00) |
| Rent | 5,000.00 | 0.00 | 5,000.00 | 8,000.00 | 0.00 | 8,000.00 |
| Equipment rental | 0.00 | 214.00 | (214.00) | 1,512.00 | 2,482.00 | (970.00) |
| Supplies | 2,171.08 | 2,478.64 | (307.56) | 15,781.32 | 20,086.05 | (4,204.73) |
| Telephone | 681.14 | 691.18 | (10.04) | 6,484.07 | 7,389.65 | (904.58) |
| Cable service | 28.10 | 0.00 | 28.10 | 4,182.46 | 1,289.11 | 2,893.35 |
| Wages | 19,528.07 | 24,278.33 | (4,750.26) | 289,987.44 | 285,767.14 | 4,220.30 |
| Utilities | 2,855.25 | 2,486.54 | 368.71 | 44,022.44 | 37,282.52 | 6,739.92 |
| Water | 0.00 | 940.74 | (940.74) | 3,977.04 | 4,921.53 | (944.49) |
| Valet parking service | 0.00 | 0.00 | 0.00 | 86.00 | 0.00 | 86.00 |
| Total operating expenses | $ 43,462.37 | $ 44,480.69 | $ (998.32) | $ 519,112.50 | $ 507,080.54 | $ 12,031.95 |

See Accountant's Compilation Report.

4.

## Bella Notte

| Years | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 12/31/2016 | 12/31/2017 | 12/31/2018 | 12/31/2019 |
|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | |
| Sales | 1,270,174 | 1,297,583 | 1,363,235 | 1,431,397 | 1,502,966 | 1,578,114 | 1,657,020 | 1,739,871 |
| Less: Sales Tax | (120,946) | (120,893) | (123,214) | (142,746) | (148,098) | (153,648) | (159,408) | (165,396) |
| Net Sales | 1,149,228 | 1,176,690 | 1,240,021 | 1,288,651 | 1,354,868 | 1,424,466 | 1,497,612 | 1,574,475 |
| Net Sales % | 0.9048 | 0.9068 | 0.9096 | 0.9003 | 0.9015 | 0.9026 | 0.9038 | 0.9049 |
| Cost of Sales | 562,276 | 582,350 | 585,767 | 611,760 | 634,698 | 658,500 | 683,196 | 708,816 |
| Gross Profit | 586,952 | 594,340 | 654,254 | 676,891 | 720,170 | 765,966 | 814,416 | 865,659 |
| GP % | 0.5107 | 0.5051 | 0.5276 | 0.5253 | 0.5315 | 0.5377 | 0.5438 | 0.5498 |
| **Operating Expenses** | | | | | | | | |
| Accounting Services | 5,500 | 4,000 | 12,000 | 9,000 | 9,300 | 9,600 | 9,900 | 10,200 |
| Advertising | 3,492 | 5,668 | 10,921 | 6,720 | 7,620 | 8,520 | 9,420 | 10,320 |
| Automobile Expenses | | | 95 | 600 | 600 | 600 | 600 | 600 |
| Alarm | 264 | | 577 | 600 | 900 | 1,200 | 1,500 | 1,800 |
| Bank Charges | 3,806 | 3,611 | 2,838 | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 |
| Casual Labor | | | 454 | 480 | 480 | 480 | 480 | 480 |
| Credit Card Fees | 35,239 | 41,333 | 26,593 | 27,186 | 28,206 | 29,268 | 30,366 | 31,506 |
| Charitable Contributions | | | 111 | 120 | 120 | 120 | 120 | 120 |
| Computer\Internet | 5,051 | 799 | 360 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 |
| Depreciation | 16,096 | 15,096 | 15,096 | 15,420 | 15,420 | 15,420 | 15,420 | - |
| Dues & Subscriptions | 20 | 200 | 500 | 240 | 480 | 720 | 960 | 1,200 |
| Exterminating | 1,560 | 1,702 | 2,571 | 1,920 | 2,160 | 2,400 | 2,640 | 2,400 |
| Garbage | 4,361 | 5,718 | 5,886 | 5,340 | 5,700 | 6,060 | 6,420 | 6,780 |
| Insurance | 16,585 | 14,386 | 18,438 | 16,500 | 16,980 | 17,520 | 18,000 | 18,540 |
| Laundry & Cleaning | 14,970 | 15,315 | 11,838 | 14,040 | 15,240 | 16,440 | 17,640 | 18,840 |
| Legal & Professional | 75 | 10,000 | 5,020 | 5,040 | 6,240 | 7,440 | 8,640 | 2,400 |
| License & Permits | 6,245 | 2,090 | 8,760 | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 |

| Years | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 12/31/2016 | 12/31/2017 | 12/31/2018 | 12/31/2019 |
|---|---|---|---|---|---|---|---|---|
| Maintenance | 2,427 | 1,947 | 11,135 | 5,160 | 5,760 | 6,360 | 6,960 | 7,560 |
| Office | 1,613 | 340 | 1,605 | 1,200 | 1,560 | 1,920 | 2,280 | 2,520 |
| Payroll Taxes - FICA | 45,747 | 49,385 | 44,564 | 25,092 | 25,596 | 26,112 | 26,628 | 27,156 |
| Payroll Taxes - SUTA | | | | 7,752 | 7,752 | 7,752 | 7,752 | 7,752 |
| Payroll Taxes - FUTA | | | | 888 | 888 | 888 | 888 | 888 |
| Payroll Service | 3,004 | 3,083 | 3,156 | 3,060 | 3,180 | 3,300 | 3,420 | 3,540 |
| Franchise Tax | 105 | 100 | | 120 | 120 | 120 | 120 | 120 |
| Rent | | | 19,000 | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 |
| Equipment Rental | 2,079 | 2,482 | 1,701 | 2,100 | 2,340 | 2,460 | 2,700 | 2,940 |
| Repairs | 1,230 | | 30,000 | 2,400 | 4,800 | 7,200 | 9,600 | 6,000 |
| Supplies | 13,991 | 22,337 | 20,092 | 18,780 | 19,680 | 20,580 | 21,480 | 22,380 |
| Telephone | 13,795 | 8,718 | 8,284 | 10,260 | 10,260 | 10,260 | 10,260 | 10,260 |
| Cable Service | 1,583 | 2,523 | 4,250 | 2,760 | 2,760 | 2,760 | 2,760 | 2,760 |
| Wages | 330,982 | 323,456 | 310,252 | 327,996 | 334,560 | 341,256 | 348,084 | 355,044 |
| Utilities | 38,875 | 38,984 | 48,867 | 42,240 | 42,840 | 43,440 | 44,040 | 44,640 |
| Water | 4,725 | 5,698 | 3,977 | 4,800 | 5,040 | 5,280 | 5,520 | 5,040 |
| Valet Parking | | | 86 | 60 | 60 | 60 | 60 | 60 |
| Penalties | 1,019 | 950 | | - | - | - | - | - |
| | | | | | | | | |
| Net Income Before Ext Items | 574,440 | 579,921 | 629,027 | 665,094 | 683,862 | 702,756 | 721,878 | 711,066 |
| Add: Depreciation | 12,512 | 14,419 | 25,227 | 11,797 | 36,308 | 63,210 | 92,538 | 154,593 |
| Less: Capital Expenditures | 16,096 | 15,096 | 15,096 | 15,420 | 15,420 | 15,420 | 15,420 | - |
| Cash Flow | 28,608 | 29,515 | 40,323 | 27,217 | 51,728 | 78,630 | 107,958 | 154,593 |

| Bella Notte / Years | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 12/31/2016 | 12/31/2017 | 12/31/2018 | 12/31/2019 |
|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | |
| Sales | 1,270,174 | 1,297,583 | 1,363,235 | 1,431,337 | 1,502,966 | 1,578,114 | 1,657,020 | 1,739,871 |
| Less: Sales Tax | (120,946) | (120,893) | (123,214) | (142,746) | (148,098) | (153,648) | (159,408) | (165,396) |
| Net Sales | 1,149,228 | 1,176,690 | 1,240,021 | 1,288,651 | 1,354,868 | 1,424,466 | 1,497,612 | 1,574,475 |
| | | | | | | | | |
| Net Sales % | 0.9048 | 0.9068 | 0.9096 | 0.9003 | 0.9015 | 0.9026 | 0.9038 | 0.9049 |
| | | | | | | | | |
| Cost of Sales | 562,276 | 582,350 | 585,767 | 611,760 | 634,698 | 658,500 | 683,196 | 708,816 |
| | | | | | | | | |
| Gross Profit | 586,952 | 594,340 | 654,254 | 676,891 | 720,170 | 765,966 | 814,416 | 865,659 |
| | | | | | | | | |
| GP % | 0.5107 | 0.5051 | 0.5276 | 0.5253 | 0.5315 | 0.5377 | 0.5438 | 0.5498 |
| | | | | | | | | |
| **Operating Expenses** | | | | | | | | |
| Accounting Services | 5,500 | 4,000 | 12,000 | 9,000 | 9,300 | 9,600 | 9,900 | 10,200 |
| Advertising | 3,492 | 5,668 | 10,921 | 6,720 | 7,620 | 8,520 | 9,420 | 10,320 |
| Automobile Expenses | | | 95 | 600 | 600 | 600 | 600 | 600 |
| Alarm | 264 | | 577 | 600 | 900 | 1,200 | 1,500 | 1,800 |
| Bank Charges | 3,806 | 3,611 | 2,838 | 3,420 | 3,420 | 3,420 | 3,420 | 3,420 |
| Casual Labor | | | 454 | 480 | 480 | 480 | 480 | 480 |
| Credit Card Fees | 35,239 | 41,333 | 26,593 | 27,185 | 28,206 | 29,268 | 30,366 | 31,506 |
| Charitable Contributions | | | 111 | 120 | 120 | 120 | 120 | 120 |
| Computer\Internet | 5,051 | 799 | 360 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 |
| Depreciation | 16,096 | 15,096 | 15,096 | 15,420 | 15,420 | 15,420 | 15,420 | - |
| Dues & Subscriptions | 20 | 200 | 500 | 240 | 480 | 720 | 960 | 1,200 |
| Exterminating | 1,560 | 1,702 | 2,571 | 1,920 | 2,160 | 2,400 | 2,640 | 2,400 |
| Garbage | 4,361 | 5,718 | 5,886 | 5,340 | 5,700 | 6,060 | 6,420 | 6,780 |
| Insurance | 16,586 | 14,386 | 18,438 | 16,500 | 16,980 | 17,520 | 18,000 | 18,540 |
| Laundry & Cleaning | 14,970 | 15,315 | 11,838 | 14,040 | 15,240 | 16,440 | 17,640 | 18,840 |
| Legal & Professional | 75 | 10,000 | 5,020 | 5,040 | 6,240 | 7,440 | 8,640 | 2,400 |
| License & Permits | 6,245 | 2,090 | 8,760 | 5,700 | 5,700 | 5,700 | 5,700 | 5,700 |

| Years | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 12/31/2016 | 12/31/2017 | 12/31/2018 | 12/31/2019 |
|---|---|---|---|---|---|---|---|---|
| Maintenance | 2,427 | 1,947 | 11,135 | 5,160 | 5,760 | 6,360 | 6,960 | 7,560 |
| Office | 1,613 | 340 | 1,605 | 1,200 | 1,560 | 1,920 | 2,280 | 2,520 |
| Payroll Taxes - FICA | 45,747 | 49,385 | 44,564 | 25,092 | 25,596 | 26,112 | 26,628 | 27,156 |
| Payroll Taxes - SUTA | | | | 7,752 | 7,752 | 7,752 | 7,752 | 7,752 |
| Payroll Taxes - FUTA | | | | 888 | 888 | 888 | 888 | 888 |
| Payroll Service | 3,004 | 3,083 | 3,156 | 3,060 | 3,180 | 3,300 | 3,420 | 3,540 |
| Franchise Tax | 105 | 100 | | 120 | 120 | 120 | 120 | 120 |
| Rent-Chase-Class One | | | 35,000 | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 |
| Equipment Rental | 2,079 | 2,482 | 1,701 | 2,100 | 2,340 | 2,460 | 2,700 | 2,940 |
| Repairs | 1,230 | | 30,000 | 2,400 | 4,800 | 7,200 | 9,600 | 6,000 |
| Supplies | 13,991 | 22,337 | 20,092 | 18,780 | 19,680 | 20,580 | 21,480 | 22,380 |
| Telephone | 13,795 | 8,718 | 8,284 | 10,260 | 10,260 | 10,260 | 10,260 | 10,260 |
| Cable Service | 1,583 | 2,523 | 4,250 | 2,760 | 2,760 | 2,760 | 2,760 | 2,760 |
| Wages | 330,982 | 323,456 | 310,252 | 327,395 | 334,560 | 341,256 | 348,084 | 355,044 |
| Utilities | 38,875 | 38,984 | 48,867 | 42,240 | 42,840 | 43,440 | 44,040 | 44,640 |
| Water | 4,725 | 5,698 | 3,977 | 4,800 | 5,040 | 5,280 | 5,520 | 5,040 |
| Valet Parking | | | 86 | 60 | 60 | 60 | 60 | 60 |
| Penalties | 1,019 | 950 | | | | | | |
| | | | | | | | | |
| Net Income Before Ext Items | 574,440 | 579,921 | 645,027 | 665,094 | 683,862 | 702,756 | 721,878 | 711,066 |
| Add: Depreciation | 12,512 | 14,419 | 9,227 | 11,757 | 36,308 | 63,210 | 92,538 | 154,593 |
| Less: Capital Expenditures | 16,096 | 15,096 | 15,096 | 15,420 | 15,420 | 15,420 | 15,420 | |
| Cash Flow | 28,608 | 29,515 | 24,323 | 27,217 | 51,728 | 78,630 | 107,958 | 154,593 |

Projections - Personal
Ramon and Bertha Aguirre
14-24420

| | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| **Income** | | | | | |
| Net Income From Employment - Bertha Aguirre | $17,631.36 | $17,807.67 | $17,985.75 | $18,165.61 | $18,347.26 |
| Rental Income – Ramon Aguirre | $49,200.00 | $49,200.00 | $49,692.00 | $50,188.92 | $50,690.81 |
| Social Security - Ramon Aguirre | $16,752.00 | $16,752.00 | $16,919.52 | $17,088.72 | $17,259.60 |
| **Total Income** | $83,583.36 | $84,419.19 | $85,263.39 | $86,116.02 | $86,977.18 |
| **Expenses** | | | | | |
| Mortgage - Residence (Plan Payment)* | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Real estate taxes | $25,000.00 | $28,750.00 | $33,062.50 | $38,021.88 | $43,725.16 |
| Property, homeowner's, or renter's insurance | $5,700.00 | $5,842.50 | $5,988.56 | $6,138.28 | $6,291.73 |
| Home maintenance, repair, and upkeep expenses | $600.00 | $615.00 | $630.38 | $646.13 | $662.29 |
| Electricity, heat, natural gas | $6,000.00 | $6,150.00 | $6,303.75 | $6,461.34 | $6,622.88 |
| Water, sewer, garbage collection | $3,000.00 | $3,075.00 | $3,151.88 | $3,230.67 | $3,311.44 |
| Telephone, cell phone, Internet, satellite, and cable services | $3,336.00 | $3,419.40 | $3,504.89 | $3,592.51 | $3,682.32 |
| Food and housekeeping supplies | $6,000.00 | $6,150.00 | $6,303.75 | $6,461.34 | $6,622.88 |
| Clothing, laundry, and dry cleaning | $600.00 | $615.00 | $630.38 | $646.13 | $662.29 |
| Personal care products and services | $480.00 | $492.00 | $504.30 | $516.91 | $529.83 |
| Medical and dental expenses | $1,320.00 | $1,353.00 | $1,386.83 | $1,421.50 | $1,457.03 |
| Car Fuel | $3,600.00 | $3,690.00 | $3,782.25 | $3,876.81 | $3,973.73 |
| Vehicle insurance | $4,560.00 | $4,674.00 | $4,790.85 | $4,910.62 | $5,033.39 |
| **Total Expenses** | $60,196.00 | $64,825.90 | $70,040.30 | $75,924.12 | $82,574.95 |
| **Net Income** | $23,387.36 | $19,593.29 | $15,223.09 | $10,191.90 | $4,402.22 |

*Payment to Chase for real estate for residence and business is paid by business in the amount of $8,000.00 per month