IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RAMON AGUIRRE AND BERTHA AGUIRRE, | Case No. 14-24420 |
| | Hon. Timothy A. Barnes |
| Debtors. | |

**OBJECTION OF WHEELER FINANCIAL, INC., TO DEBTORS'
MOTION TO MODIFY CONFIRMED CHAPTER 11 PLAN**

Wheeler Financial, Inc. ("Wheeler") hereby objects (the "Objection") to the *Debtors' Motion pursuant to 11 U.S.C. § 1127(e) to Modify Confirmed Chapter 11 Plan as to Class Two (Wheeler-Dealer, Ltd d/b/a Wheeler Financial, Inc., DuPage County, Cook County and JPMorgan Chase Bank, N.A.)* [Dkt. No. 99] (the "Motion")[1] and respectfully states as follows:

**Introduction**

As proposed by the Debtors and as confirmed by this Court's Order of April 15, 2015 [Dkt. Nos. 84, 85], the Plan required the Debtors to pay the Tax Claim (the "Tax Claim Payment") on or before October 15, 2015 (the "Plan Payment Deadline").[2]  In direct contravention of the Plan, the Debtors made no payment on the Tax Claim.  Now, almost two months after the expiration of the Plan Payment Deadline, the Debtors seek to modify the Plan pursuant to 11 U.S.C. § 1127(e) to unilaterally grant to themselves an additional six months to make the Tax Claim Payment.  The Court should refuse.

---

[1] JPMorgan Chase Bank, N.A. ("JPMorgan") has also filed *JPMorgan Chase Bank, N.A.'s Response to Motion of Wheeler Financial, Inc., for Relief from the Automatic Stay* [Dkt. No. 100] ("Response Brief"), a portion of which argues that the Debtors may modify the Plan under 11 U.S.C. § 1127(e).  This Objection responds to those arguments as well.

[2] Undefined terms in this Introduction shall have the meanings set forth below.

{11517-001 OBJ A0425122.DOCX}

- First, the Debtors ignore § 1127(f) of the Bankruptcy Code, because they cannot meet their burdens thereunder. Section 1127(f) requires them to prove that the Modification satisfies the plan confirmation requirements found in §§ 1121-1129 of the Bankruptcy Code. The proposed Modification violates three separate requirements of § 1127(f):

    (i) Section 1129(a)(7)—Wheeler would receive more in a chapter 7 liquidation than under the Plan, as modified;

    (ii) Section 1122(a)—the Plan places two claims secured by different collateral in same class, Class 2; and

    (iii) Section 1123(a)(4)—the Plan unfairly discriminates between the Tax Claim and DuPage County's tax lien.

- Second, the Debtors and JPMorgan have shown nothing but disregard for the Tax Claim, and the Modification would frustrate Wheeler's legitimate expectation to be able to apply for a tax deed at this time. The Debtors and JPMorgan have known about the Tax Claim for over two years (the Debtors have known for over four years) and have repeatedly refused to pay it off. Instead, the parties prioritized paying down JPMorgan's junior lien in an amount almost two-and-a-half times (2.5x) the amount of the Tax Claim. The Court, in the exercise of its discretion, should deny the Motion and allow Wheeler to finally enforce its state law rights against the Property.

Accordingly, the Court should reject the proposed Modification and deny the Motion.

## Background

**A. The Wheeler Claim**

1. Wheeler purchased the 2010 real estate taxes owing on the Debtors' property located at 1374 West Grand Avenue, Chicago, Illinois (the "Property"), and thus, under applicable state law, holds a secured claim against the Property (the "Tax Claim"). *See* 735 ILCS 200/21-75; *In re Lamont*, 740 F.3d 397, 404 (7th Cir. 2014).

2. Pursuant to 35 ILCS 200/22-30, on December 10, 2014, Wheeler filed a Petition for a tax deed in the Circuit Court of Cook County which was identified as case number 2014 CoTD 4203 (the "State Court Case").

3. Additional information about the Tax Claim and the State Court Case is set forth in pages 2-4 of the *Motion of Wheeler Financial, Inc., for Relief from the Automatic Stay* [Dkt. No. 91] (the "Stay Relief Motion," and all undefined terms in this Objection shall have the meanings set forth in the Stay Relief Motion).

**B. The Confirmed Plan**

4. On June 30, 2014, prior to the expiration of the Redemption Period, the Debtors filed the above-entitled chapter 11 case (the "Case"). Wheeler was not given notice of the Case by the Debtors and it was unaware of the existence of the Case until it received copies of Class 2 Ballots to vote on the *Second Amended Plan of Reorganization* [Dkt. No. 70] (the "Plan") in the early spring of 2015. *See* Stay Relief Motion at p. 3.

5. The Plan, as originally proposed, treated the Tax Claim (as well as the claim of the DuPage County Treasurer on account of unpaid real estate taxes owing on the real property known as 4599 Hatch Lane, Lisle, Illinois) in Class 2 of the Plan and provided that Wheeler was entitled to payment "of the entire balance owed to Wheeler" from the proceeds of the allegedly anticipated sale of the real property commonly known as 1307 Burlington, Lisle, Illinois (the "Lisle Property"). The Plan further provided that the DuPage County Treasurer was also entitled to payment in full on its claim from the expected sale proceeds from the Lisle Property and that JPMorgan might also receive up to $50,000 from such sale proceeds. The Plan provided no deadline for the sale of the Lisle Property or for the payment of Class 2 Claims. Further, it provided no actual obligation of the Debtors to sell the Lisle Property.

6. At or shortly prior to the confirmation hearing on the Plan, the Debtors agreed to amend the Plan and added October 15, 2015 as the Plan Payment Deadline.

7. On April 15, 2015, the Court entered an order [Dkt. No. 85] confirming (the "Confirmation Order") the Plan, as well as an order amending the Plan [Dkt. No. 84] that set the Plan Payment Deadline, October 15, 2015.

8. The Debtors did not make any payments on account of the Tax Claim prior to the expiration of Plan Payment Deadline. Accordingly, on November 19, 2015, well after expiration of the Plan Payment Deadline, Wheeler filed the Stay Relief Motion and requested that the Court modify the automatic stay for "cause" under 11 U.S.C. § 362(d)(1), so that Wheeler could proceed with the State Court Case and obtain a tax deed to the Property. The Stay Relief motion is currently being briefed and is set for argument on January 20, 2016.

9. On December 7, 2015, the Debtors filed the Motion, which asks the Court to modify the Plan (the "Modification") pursuant to 11 U.S.C. § 1127(e) to extend the date to pay Class 2 Claims, including the Tax Claim, by six months, to April 15, 2016 (the "New Deadline"). In the event that the Debtors again fail to pay the Tax Claim by the New Deadline, the Modification requests further extension of the New Deadline to allow JPMorgan to have an additional 30 days to itself pay the Tax Claim.

## Plan Modification under § 1127(e)

10. Section 1127(e) of the Bankruptcy Code governs modification of an individual's confirmed chapter 11 plan and provides as follows:

> If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to—
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

    (2) extend or reduce the time period for such payments; or

    (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

11 U.S.C. § 1127(e).

  11.  However, any modification under § 1127(e) must, pursuant to § 1127(f), comply with the other Bankruptcy Code provisions governing plan confirmation, §§ 1121–1129, and "the plan, as modified, shall become the plan only after there has been disclosure under section 1125 as the court may direct, notice and a hearing, and such modification is approved." *See* 11 U.S.C. § 1127(f).

## Objections

  12.  There are multiple reasons why this Court should refuse to allow the Plan to be modified by the Debtors under these circumstances. First, the Plan, as proposed to be modified, fails to meet the requirements of § 1127(f). Second, modification is entirely discretionary and the Court should not exercise its discretion in favor of this proposed Modification.

**I.  Section 1127(f) prohibits the proposed Modification of the Plan.**

  13.  The proposed Modification runs afoul of § 1127(f) of the Bankruptcy Code. The Debtors cannot sustain their burden of proving that the Modification satisfies the plan confirmation requirements of §§ 1121 through 1129, as required by § 1127(f). In fact, both JPMorgan and the Debtors completely ignore the requirements of § 1127(f). On this basis alone the Court should deny the Motion.

  14.  Section 1127(f) provides that §§ 1121 through 1128 and "the requirements" of § 1129 apply to any proposed plan modification under § 1127(e). *See* 11 U.S.C. § 1127(f). The Debtors, as the proponent of the Modification, have the burden of proving compliance with

§§ 1121 through 1129. *See*, *e.g.*, *In re Repurchase Corp.*, 332 B.R. 336, 342 (Bankr. N.D. Ill. 2005) *aff'd sub nom., Repurchase Corp. v. Bodenstein*, No. 04 B 32933, 2008 WL 4379035 (N.D. Ill. Mar. 24, 2008) ("When a Chapter 11 plan of reorganization is advanced, the plan's proponent has the burden of proving by a preponderance of evidence that the plan complies with statutory requirements for confirmation.").

15. <u>First</u>, the Modification causes the Plan to fail the "best interest of creditors" test under § 1129(a)(7)(A). That section provides that, for a plan to be confirmed, each impaired class must either

> (i) accept[ ] the plan; or
>
> (ii) . . . receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7)(A). In a chapter 7 bankruptcy case, the chapter 7 trustee must redeem a tax lien within the redemption period or the additional 60-day period provided by § 108(b) of the Bankruptcy Code.[3] *In re McKinney*, 341 B.R. 892, 901 (Bankr. C.D. Ill. 2006). As the bankruptcy court in *McKinney* explained,

> For a chapter 7 trustee . . . the state law right to redeem property from a tax sale is the sole procedure available to save the equity value in such property for the benefit of the estate. The 60-day extension of time provided by Section 108(b) . . . gives the trustee a chance to redeem in order to preserve the estate's interest.

---

[3] Courts have held that expiration of the redemption period during the bankruptcy case does not prevent a chapter 13 or a chapter 11 debtor from treating a lien for real property taxes in a plan. *Lamont*, 740 F.3d at 409-10 (chapter 13); *In re Bovino*, 496 B.R. 492, 505 (Bankr. N.D. Ill. 2013) (chapter 11) (noting, however, that the debtor must obtain plan confirmation prior to the end of the redemption period). But this is because §§ 1123(b)(5) and 1322(b)(2) allow a debtor to "modify the rights of holder of secured claims" in a chapter 11 plan or chapter 13 plan, respectively. Neither of these sections apply in chapter 7. As such, the trustee has "no power to reorganize or modify claims," and thus, "the state law right to redeem the property from a tax sale is the sole procedure available." *McKinney*, 341 B.R. at 901.

*Id.*

16. In this Case, the redemption period on the Tax Claim expired on June 8, 2015. Stay Relief Motion ¶ 8. A chapter 7 trustee therefore could not redeem the Tax Claim, and Wheeler would be entitled to continue prosecuting the State Court Case and obtain a tax deed to the Property. Wheeler would thus receive more in a chapter 7 liquidation than under the modified plan proposed by the Debtors, and so the Modification fails § 1129(a)(7) and cannot be confirmed under § 1127(f).

17. <u>Second</u>, the Modification violates § 1122(a) of the Bankruptcy Code, which provides that only "substantially similar" claims may be classified together. 11 U.S.C. § 1122(a). "Claims secured by different properties are not substantially similar." *In re Batista-Sanchez*, 502 B.R. 227, 231 (Bankr. N.D. Ill. 2013). Here, the Modification violates § 1122(a) by placing the Tax Claim in the same class, Class 2, as the DuPage County Treasurer's tax claim — the claims are secured by different collateral (separate parcels of real estate), and as such, they cannot be classified together. The Tax Claim must be classified separately, and Wheeler, as the sole party entitled to vote in such a proper class, would vote against the Modification.

18. <u>Third</u>, the Modification violates § 1123(a)(4), which requires that a plan "provide the same treatment of each claim . . . of a particular class" unless the parties agree otherwise. 11 U.S.C. § 1123(a)(4). Here, the Modification extends the Plan Payment Deadline to the New Deadline, except with respect to the Tax Claim, as to which JPMorgan is to be given an additional 30 days to pay. The Modification thus unfairly discriminates between claims in the same class by providing different time periods for payment and inconsistent time frames in which the tax creditors therein would be able to exercise their state law rights—both are delayed

an additional six months, but Wheeler is further delayed the additional 30-day extension for payment by JPMorgan that does not apply to the DuPage County Treasurer.

19. The Debtors therefore cannot meet their burden of proving that the Modification satisfies the requirements of §§ 1122, 1123, and 1129, and as such, the Court must deny the Motion.

**II.    The Court should exercise its discretion and deny the proposed Modification.**

20. Even if the Modification did comply with § 1127(f), which it clearly does not, the Debtors cannot justify modifying the Plan, and the Court should exercise its discretion to deny the Motion.

**A.    Modification under § 1127(e) is discretionary, not of right.**

21. As an initial matter, § 1127(e) is not an automatic "Do Over" provision. It does not grant the Debtors *carte blanche* authority to modify the Plan, as urged by the Debtors and JPMorgan. The Seventh Circuit Court of Appeals has made clear that the bankruptcy court retains discretion to deny modification, even when the request meets the technical requirements of the Bankruptcy Code. Congress enacted § 1127(e) and (f) as part of BAPCPA, and to date, the Seventh Circuit has not addressed these provisions (nor are there any reported decisions in the Northern District of Illinois). However, the language of § 1127(e) is almost identical to that found in § 1329, which governs modification of a confirmed chapter 13 plan and which the Seventh Circuit addressed in *In re Witkowski,* 16 F.3d 739 (1994).

22. In *Witkowski*, the Seventh Circuit emphasized that § 1329, like § 1127(e), "is phrased in . . . permissive language—'the plan *may* be modified.'" *Id.* (quoting 11 U.S.C. § 1329(a)) (emphasis in original). Although § 1127(e) imposes no "threshold" showing necessary to modify a plan, *Witkowski* does not hold that a debtor has an absolute right to modification. In

fact, *Witkowski* clearly rejects such a notion. It provides that a debtor merely has a "**right to seek** a modification. Whether the modification will be granted is within the bankruptcy court's discretion." *Id.* at 748 (emphasis added). As the Seventh Circuit repeatedly stated, "modification under § 1329 is discretionary," and "all proposed modifications need not be approved." *Id.* at 746.

23.     Therefore, even if the proposed modification meets all of the technical requirements under the Bankruptcy Code—that is, the modification is permissible under § 1127(e) and meets all of the standards for confirmation set forth in §§ 1121-1129, as required by § 1127(f)—the bankruptcy court still has discretion to deny the modification based on the circumstances of the case. JPMorgan's argument that *Witkowski* forbids a bankruptcy court from considering the circumstances of the case is nonsense and conveniently ignores the Seventh Circuit's repeated statements that modification is "discretionary" and that all proposed modifications "need not be approved." In fact, one of the very few bankruptcy courts to address the meaning of § 1127(e) has followed the standard set forth in *Witkowski* and, in the exercise of its discretion, denied modification of a confirmed chapter 11 plan. *In re Sandford,* 498 B.R. 307, 313 (Bankr. D.N.M. 2013) (following *Witkowski* and exercising discretion to deny proposed modification under § 1127(e) based on the equities in the case, not based on technical compliance with the Bankruptcy Code).[4]

24.     If the Debtors' and JPMorgan's view of § 1127(e) was accepted, then any individual debtor would always be able to modify any plan, as many times as it wished. In their world, if the Debtors fail to make the payments as proposed under the Modification, they need

---

[4] In addition to the Seventh Circuit's holding in *Witkowski* that plan modification is discretionary, the Seventh Circuit has also cautioned that "if modification of a plan of reorganization would upset legitimate expectations, it may be refused." *In re Envirodyne Industries, Inc.*, 29 F.3d 301, 304 (7th Cir. 1994).

{11517-001 OBJ A0425122.DOCX}                    9

merely once again file a motion to modify the Plan and once again they would be entitled to more time. The process might never end.

**B.     The Court should reject the Modification as wholly inequitable.**

25.     In the Motion, the Debtors ask the Court to unilaterally extend the Plan Payment Deadline, without justification, solely at Wheeler's expense and after the Plan Payment Deadline had already expired. The Court should refuse.

26.     First, and most importantly, the Modification contravenes the plain directive of the Seventh Circuit's opinion in *In re LaMont*—and Judge Wedoff's opinion in *In re Bates*—that failure to comply with the terms of a plan results in stay relief for a tax purchaser. *See Lamont,* 740 F.3d at 409; *Bates*, 270 B.R. at 468 (noting that, "if the debtor fails to make the required plan payments, the tax purchaser may enforce its state law lien rights"). As discussed below, both the Debtors and JPMorgan have known about the tax claim for years, but, rather than pay it, have chosen to prioritize the payment of JPMorgan's junior lien instead. When the Debtors filed this Case, the Bankruptcy Code afforded both the Debtors and JPMorgan significant relief, preventing Wheeler from exercising its state law rights long after the redemption period expired, and significant time to pay the Tax Claim. The Debtors and JPMorgan chose a different path.

27.     But when the Debtors failed to pay the Tax Claim by the Plan Payment Deadline, October 15, 2015, that right to the extraordinary relief came to an end. The Seventh Circuit was unequivocal—"if the debtors failed to comply with the plan, then [the tax purchaser's] equitable remedy would have survived and he could have sought an order to issue a deed." *Lamont,* 740 F.3d at 409. In other words, "the expiration of the redemption period does not . . . necessitate a modification of the automatic stay ***so long as the debtors comply with the plan***." *Id.* at 409-410 (emphasis added). Wheeler has moved for relief from the automatic stay, and "cause" already

exists under § 362(d)(1). The Debtors and JPMorgan cannot avoid the Seventh Circuit's directive.

28. <u>Second</u>, the Debtors and JPMorgan have shown nothing but disregard for the Tax Claim, despite having every opportunity to pay it off, and instead have prioritized paying down JPMorgan's junior lien. The Debtors should not be allowed to unilaterally modify the Plan and get an umpteenth bite at the apple.

29. The Debtors have had over four years to pay the Tax Claim. JPMorgan complains bitterly about Wheeler exercising its state law rights, but JPMorgan has known about the Tax Claim for over two years (since before November of 2013) and has chosen to not pay it off.[5] After filing bankruptcy, the Debtors opted to make substantial payments to JPMorgan rather than make any payments on account of the Tax Claim. Rather than pay Wheeler anything, the Debtors again deferred the obligation and confirmed a Plan that delayed payment of the Tax Claim until October 15, 2015.

30. The Debtors' disregard for paying the Tax Claim goes even further. Upon realizing that they would not make the Plan Payment Deadline, the Debtors did not move to extend Plan Payment Deadline before it expired, nor did they contact Wheeler to discuss what might be done about the situation. The Debtors did nothing. When Wheeler contacted Debtors' counsel on the subject, no return communication of any sort was ever received. It was only after Wheeler filed its Stay Relief Motion that the Debtors did anything. The Debtors waited until

---

[5] On November 11, 2013, after the Debtors filed their second of three bankruptcy cases (this Case being the third), Case No. 13-37728, JPMorgan moved for relief from stay on the grounds that, *inter alia*, the Debtors had not paid their 2010, 2011 and 2012 real estate taxes. *See JPMorgan Chase Bank's Motion for Relief from Automatic Stay and/or for Dismissal*, Case No. 13-37728 [Dkt. No. 15], ¶ 16. JPMorgan also admitted knowledge of the Tax Claim in August of 2014 in this Case. *See* [Dkt. No. 45], ¶¶ 16, 17. JPMorgan even obtained an estimate of redemption in February of 2015, which it attached as an exhibit to the Response Brief.

almost *two months after* the expiration of the Plan Payment Deadline and over two weeks after Wheeler filed its Stay Relief Motion to seek the discretionary relief of plan modification. The Debtors disregard for the Plan Payment Deadline has caused Wheeler to incur substantial additional expense, and now the Debtors seek the magic of a "Do Over."

31. This is par for the course. The Debtors never notified Wheeler of the Case (or of their two previous bankruptcies) or gave Wheeler notice of the claims bar date. They have failed to make a single payment on the Tax Claim (a senior secured lien), and nothing indicates that the Debtors have made any effort to effectuate the Plan, other than to continue paying JPMorgan $8,000 per month.

32. If anything, the evidence suggests the contrary. According to the Debtors, in the almost eight months since confirmation, the Debtors received just one offer for the Lisle Property that was far below their asking price with unfavorable terms. That very well might indicate that they are either not aggressively marketing the property or pricing it appropriately, or both.[6] And of course, the Motion has no description of the Debtors' marketing efforts or when the broker believes the Lisle Property will sell (assuming there is a broker, which the Motion does not mention). Debtors under a Court ordered deadline to accomplish an act do not have the luxury of just waiting until they get the deal they want. The Debtors were obligated to pay the Tax Claim in full prior to the expiration of the Plan Payment Deadline. Instead, they chose to do nothing.

---

[6] In any event, bankruptcy courts have recognized that the failure of a plan provision or lack of funding does not justify modifying the plan—if anything, it suggests that the plan is not feasible and that reorganization is less likely. *See*, *e.g.*, *In re Dam Rd. Mini Storage*, 156 B.R. 270, 271 (Bankr. S.D. Cal. 1993) ("[T]he debtor's inability to refinance or sell the property by the "drop dead date" in order to pay its creditors is not a reason for modification under § 1127(b)"); *In re Stevenson*, 148 B.R. 592 (D. Idaho 1992) (affirming bankruptcy court's refusal to modify plan and noting that "no amount of financial constraint will, in and of itself, relieve the Debtor of its obligations").

33.     <u>Third</u>, the Debtors specifically agreed in the Plan to pay off the Tax Claim by October 15, 2015.  Under the Debtors' and JPMorgan's theory of the law, the Debtors have the unfettered right to continue modifying the Plan (and paying JPMorgan) until they decide they are ready to pay the Tax Claim or dismiss the Case.  That cannot be how the Bankruptcy Code works.  A confirmed plan is a contract, *see In re Modern Steel Treating Co.*, 130 B.R. 60, 65 (Bankr. N.D. Ill. 1991), and a modification should not be approved when it frustrates a settlement entered into by the parties.  *Sandford*, 498 B.R. at 313 (denying modification under § 1127(e) because, *inter alia*, it would upset a settlement reached between the debtor and secured claimants); *see Envirodyne*, 29 F.3d at 304 (holding that plan modification should not upset "legitimate expectations" of creditors).  Modifying the Plan would allow the Debtors to unilaterally withdraw from this agreement and "upset [Wheeler's] legitimate expectation" to apply for a tax deed in the event that the Debtors failed to meet the Plan Payment Deadline.  *See In re Archway Homes, Inc.,* No. 12-02226-8-SWH, 2013 WL 5835714, at *5 (Bankr. E.D.N.C. Oct. 30, 2013) (refusing to modify confirmed chapter 11 plan, noting that the outcome, "while unfortunate, [is] also precisely the outcome to which the debtor agreed").

34.     JPMorgan argues that the "startling" equities weigh in favor of modifying the Plan.  Response Brief at 9-10.  Of course that is how JPMorgan sees it.  JPMorgan's argument boils down to this: "JPMorgan should be allowed to exercise its state law rights, and Wheeler should not."  JPMorgan suggests that the Debtors will lose their restaurant and residence if the Plan is not modified and stay relief is granted.  In fact, Wheeler has every intention of attempting to reach an agreement with the Debtors that will allow the restaurant to continue operating.  As for the Debtors' loss of their residence, that is up to JPMorgan, which has the mortgage, not

{11517-001 OBJ A0425122.DOCX}                    13

Wheeler—apparently the "startling" equities will not stop JPMorgan from proceeding with the exercise of its legitimate state law rights to protect its state law property interest.

35. JPMorgan also derides Wheeler as merely being "tired of waiting." This is easy to say for a creditor receiving $8,000 a month from the Debtors, and it oversimplifies the situation—the Debtors have defaulted under the terms of their confirmed Plan and failed to pay a Tax Claim that was due over four years ago. And Wheeler is tired of waiting and under applicable law, Wheeler should not have to wait any longer to obtain the relief to which it is entitled.

36. Finally, JPMorgan mentions briefly that allowing stay relief will cause JPMorgan to lose its "substantial collateral." Response Brief at 9. This is the real reason that JPMorgan opposes the Stay Relief Motion and is willing to help pay the Tax Claim, not because "the Debtors have worked hard," as it suggests in its brief. Response Brief at 10. JPMorgan has known about the Tax Claim for over two years and had every opportunity to pay it off. Outside of bankruptcy, JPMorgan would have no defense to the Tax Claim and would lose its collateral to Wheeler in the State Court Case. Neither JPMorgan nor the Debtors have provided any justification for why this result should change in bankruptcy, other than that they both wish they were not exposed to this outcome.

37. As such, the Court should deny the Motion and grant the Stay Relief Motion.

## Conclusion

38. For all of these reasons, Wheeler Financial, Inc., respectfully requests that the Court: (i) deny the Motion, and (ii) grant such other just and equitable relief.

Dated: December 28, 2015

Respectfully submitted,

WHEELER FINANCIAL, INC.

By  /s/ Robert M. Fishman
     One of its attorneys

Robert M. Fishman (3124316)
David R. Doyle (6303215)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60654
rfishman@shawfishman.com
ddoyle@shawfishman.com