IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RAMON AGUIRRE AND BERTHA AGUIRRE, | ) |
| | ) Case No. 14-24420 |
| | ) |
| | ) Judge Timothy Barnes |
| Debtors. | ) |

## JPMORGAN CHASE BANK, N.A.'S REPLY TO OBJECTION OF WHEELER FINANCIAL INC., TO DEBTORS' MOTION TO MODIFY PLAN

JPMorgan Chase Bank, N.A. ("Chase"), by its attorney Lauren Newman of Thompson Coburn LLP, files its reply to the objection of Wheeler Financial, Inc. (the "Tax Purchaser") to the Debtors' motion pursuant to 11 U.S.C. § 1127(e) to modify confirmed chapter 11 plan (the "Modification") as to class two (Wheeler-Dealer, Ltd. d/b/a Wheeler Financial, Inc., DuPage County, Cook County and JPMorgan Chase Bank, N.A. [Docket No. 99] (hereinafter, the "Objection"), and in support hereof, states as follows:

### Introduction

At least one point is not in dispute: It is within this Court's sound discretion to allow the Debtors' to keep their Restaurant and Residence, for Chase to retain its significant collateral position, the unsecured creditors to receive payment because the Debtors will stay in business, *and the Tax Purchaser to be paid the amount it was owed on the petition date.*

The Tax Purchaser's arguments under § 1127(f) of the Bankruptcy Code are nothing short of a collateral attack on the confirmed Plan, and claims that the Modification of the Plan fails the "best interests of the creditors" test and that the Tax Purchaser's claim is misclassified, cannot be raised at this time. The argument that the Tax Purchaser is being discriminated against also fails, because the claim is receiving substantially similar treatment under the

proposed Modification to the Plan. A plan providing distribution on different dates to different creditors in the same class still treats such creditors in a "substantially similar" manner.

The Tax Purchaser's assertions of unfairness and inequity to the Debtors' request to extend the payment date for its claim under § 1127(e) are weak for multiple reasons, beginning with the fact that it is in a unique position to opt out of the bankruptcy process, with interest, under the "sale in error" provisions of Illinois real estate property tax law. More importantly, Chase has agreed to backstop the Debtors' payment, virtually eliminating the Modification's chance of failure.

The Tax Purchaser has voluntarily submitted itself to the Chapter 11 process and continues to do so, hoping for its windfall, because it has nothing to lose. Indeed, the Tax Purchaser may still apply to the circuit court for a declaration that the tax sale was a "sale in error" and be reimbursed everything it has paid, *plus interest at 12%*. 35 ILCS 200/21-310(a)(6) and 35 ILCS 200/21-315.

As the court in In re Lamont, 740 F.3rd 397, 401 (7th Cir. 2014) described in detail, instead of seeking a tax deed, if a tax purchaser does not wish to go through the bankruptcy process, it may apply to the circuit court for a declaration that the tax sale was a "sale in error" for a reason listed in the statute. See 35 ILCS 200/21-310. One such reason for a sale in error is that the taxpayer filed a petition for bankruptcy after the tax sale, but before the county issued a deed. 35 ILCS 200/21-310(a)(6). When the circuit court issues a sale in error, the tax purchaser is reimbursed by the county everything he has paid, plus interest *at 12%*. 35 ILCS 200/21-315. To the "chagrin" of the Clerk of Cook County, who filed an amicus brief in the Lamont case, the opportunity for repayment through the sale in error process has no time limit. Id.

Therefore, the Tax Purchaser's outrage over the unfairness of the Debtors' attempt to modify their existing Plan simply to extend the payment date is disingenuous. Few, if any,

creditors in bankruptcy have the opportunity to opt out of the bankruptcy process and receive a full refund of their claim with interest. Indeed, as the court in *Lamont* observed, the reason behind the long redemption period is "no doubt because the purpose of tax sales is not to strip taxpayers of their property, but to ensure the collection of taxes." *Id., at* 408.

## ARGUMENT

### I. The Tax Purchaser's attempt to collaterally attack the confirmed Plan must fail.

The Tax Purchaser misconstrues § 1127(f) (title 11, of the U.S. Code or the Bankruptcy Code, shall hereinafter be referred to as the "Code.") by using that Section to attempt to collaterally attack the Plan. The Debtors have proposed a Modification to the Second Amended Plan (hereinafter, the "Plan") under § 1127(e), which allows individual debtors in Chapter 11 cases to modify confirmed plans to increase or reduce the amount of payments on claims of a particular class provided for by the plan, or "extend or reduce the time period for such payments" due under the plan. 11 U.S.C. § 1127(e)(1) and (2). The Tax Purchaser is not entitled to a second confirmation process under § 1127(f). The only issue is whether the proposed modification somehow causes the plan to fall out of compliance § 1129 confirmation requirements. Therefore, the attacks on Plan under the "best interests of the creditors" test and misclassification of claims grounds should be wholly disregarded because the Modification simply seeks additional time for the Debtors to make payments and to allow Chase to backstop those payments.

The Tax Purchaser first alleges that the Plan fails to meet the "best interests of the creditors" test under 11 U.S.C. § 1129(a)(7)(A). The Tax Purchaser claims that in a chapter 7 bankruptcy case, the trustee must redeem the real estate taxes within the redemption period or the additional 60-day period provided for by Section 108(b) of the Code. Since that time period has long expired, the Tax Purchaser argues that Debtors now cannot redeem the taxes.

The Tax Purchaser then goes on to cite *In re McKinney*, 341 B.R. 892 (Bankr. C.D. Ill. 2006), a pre-*Lamont* bankruptcy case which followed the reasoning of *In re Bates*, 270 B.R. 455 (Bankr. N.D. Ill. 2001), and which allowed the debtors to repay delinquent taxes through a Chapter 13 plan. This Court, as well as the court in *McKinney*, rejected the notion that Section 108(b) restricts the right of debtors in bankruptcy to modify a tax purchaser's claim. *In re Bovino*, 496 B.R. 492 (Bankr. N.D. Ill. 2013). Finally, the Tax Purchaser concludes that since the redemption period expired on June 8, 2015, a chapter 7 trustee could not redeem the taxes and the Tax Purchaser would receive more in a chapter 7 liquidation than under the modified Plan, as proposed by the Debtors.

The Tax Purchaser's argument ignores the fact that the Debtors' petition was filed prior to the expiration of the redemption date, which under current case law, is the point at which Debtors may reorganize and repay delinquent real estate taxes through a plan of reorganization. That date is not reset the petition date because of the modification. See *In re Lamont, supra.; In re Bovino, supra.* (allowing for payment of delinquent real estate taxes through a chapter 11 plan). Such an interpretation would render the plain language of § 1127(e)(2), meaningless, which allows for *extensions* of payment dates.

Similarly, the Tax Purchaser's second complaint about the proposed Modification is again, nothing more than a collateral attack on the confirmed Plan. The Tax Purchaser complains that the DuPage County taxing authority should have been placed in a separate class from Cook County and the Tax Purchaser, because a DuPage County property is not "substantially similar" as the claim relates to a separate property, which classification violates §1122(a). First, the Tax Purchaser waived its right to object to the classification of its claim when it failed to object prior to confirmation of the Plan. While there appears to be some confusion as to when the Tax Purchaser first received notice of this case, the Tax Purchaser has

admitted that it at least knew about the bankruptcy case prior to confirmation of the Plan. *See Motion to Modify Stay*, wherein the Tax Purchaser states it learned of the case when it received a ballot on March 1, 2015, p. 3 [Docket No. 91]. Since the Tax Purchaser failed to object to the original Plan yet chose not to object to the classification of its claim, it is too late to do so now and is therefore bound by the current Plan.

Second, even if this Court choses to revisit this issue, § 1123(a)(1) permits classification of claims and interests subject to the restriction that the claim or interest be included if it is "substantially similar" to other claims and interests in that class. 11 U.S.C. § 1123(a)(1); *See also, In re Sentinel Management Group, Inc.*, 398 B.R. 281, 296 (Bankr. N.D. Ill. 2008). A plan proponent possesses considerable but not complete, discretion to classify claims and interests in its Chapter 11 plan of reorganization. *In re Willowbrook Assoc.*, 19 F.3d 312, 317 (7th Cir. 1994). "Similarity" is not a precise relationship. *Id.* at 318. Most courts focus on the legal attributes of the claim. *In re Draiman*, 450 B.R. 777, 791 (Bankr. N.D. Ill. 2011). Real estate tax claims are in fact "substantially similar" claims because they are of the same legal nature, even though those claims may relate to different properties. This Court found that all of the real estate tax claims to be "substantially similar" enough to confirm the original Plan.

Third, the Tax Purchaser argues that the Modification violates § 1123(a)(4) of the Code. The Tax Purchaser alleges that the Modification gives an additional thirty- day (30) extension for payment by Chase in the event the Debtors fail to pay the tax arrears, the Modification unfairly discriminated against a member class two, and therefore violates § 1123(a)(4) of the Code. 11 U.S.C. § 1123(a)(4). However, bankruptcy courts "have some discretion in deciding whether class members are receiving the same treatment." *Sentinel Management Group, Inc., supra.*, 398 B.R. at 305. The "same treatment" does not mean "identical treatment" and other courts have approved settlements where class members received different percentages of recovery to take

into account different factors so long as the settlement terms are rationally based on legitimate considerations. *Id.* In *Sentinel,* the court found that temporarily disallowing certain class members' claims did not result in a discriminatory impact. *Id.* Here, by delaying payment a very short time period so that may Chase redeem the real estate taxes in the event the Debtors fail to pay, does not constitute an unfair discrimination against a class member. In fact, the Tax Purchaser is arguably in a better position than DuPage County, since Chase has not agreed to backstop payment for DuPage County.

This Court should not allow the Tax Purchaser to relitigate all aspects of the confirmed Plan. The only issue before this Court is whether the Debtors may modify the confirmed Plan and extend the time for the Debtors to redeem the real estate taxes on the Restaurant, as provided for under § 1127(e).

**II. The Court should exercise its discretion and allow the Modification of the Plan to benefit the Debtors, Chase and all of the Debtors' creditors.**

The Tax Purchaser incorrectly asserts that that the Debtors should not be allowed to modify the confirmed plan, even though the plain language of the statute allows for such a modification and even though the modification will benefit the Debtors and every creditor, including the Tax Purchaser, who will be paid the amount it was owed on the petition date.

It is agreed that the Seventh Circuit has found that modifications under § 1329(a) of the Code are not "limitless". *Witkowski* simply stands for the proposition that there is no threshold test for modifications, as the Tax Purchaser would like this Court to impose on the Debtors. *In Matter of Witkowski,* 16 F.3d 739, 742 (7th Cir. 1994). § 1127(e) mirrors § 1329(a), as it was clearly intended for modifications in individual chapter 11 cases where the debtor presumably did not qualify for a chapter 13 bankruptcy. Under the expressed terms of the statute, the amount of the payments on claims in a particular class may be changed, the time may to pay such claims

may be extended, or the amount of the distribution provided for under the plan may be altered. *Id.* at 745. It is under these limited circumstances, as prescribed by the Code and *Witkowski*, that Chase seeks to support the Debtors' proposed Modification of the Plan.

First, the Tax Purchaser argues that the Modification contravenes the directive of *Lamont, supra.,* and urges this Court not to exercise its discretion, and to not allow an extension of the time for the Debtors nor Chase to make the tax redemption payment. *Lamont* does not "dictate" modification of the automatic stay in the event of a default, nor does it address post-confirmation modification issues. In *Lamont*, the debtors had completed their plan payments, which included tax redemption payments to the county instead to the tax purchaser, while the tax purchaser continued to insist he maintain rights to the debtors' real property. *Lamont, supra.,* at 402. The court found that upon completion of payments to the county through a chapter 13 plan, the debtors no longer had any obligation to the tax purchaser. *Id.,* at 409. The court in *Lemont* was not asked to address meaning or implement the plain language of § 1127(e).

Moreover, the Plan in this case modified and altered the Tax Purchaser's rights significantly. The court in *Lamont* analyzed the rights and remedies of tax purchasers. The tax *payer, i.e., the debtor,* owes money for past due real estate taxes to the county, not the tax purchaser. *Lamont, supra.,* at 407. The tax purchaser does not hold a right to payment. But if there is a redemption of the property, the tax purchaser has a right to the payment from the money paid to redeem the property. *Id.* The Plan modified the rights of the Tax Purchaser and converted its claim into a contract claim. *See JPMorgan Chase Bank's response to Wheeler, Inc.'s motion for relief from stay,* pp. 4-5 [Docket No. 100]. The Plan states that the Debtors owe "over $40,000 to Wheeler-Dealer Ltd., d/b/a Wheeler Financial, Inc., a real estate tax purchaser, Cook County Clerk and/or DuPage County Treasurer/DuPage County Clerk, for past due real estate taxes...." Plan, p. 10. This obligation is vague at best. Here, where the Plan is

void of any default or enforcement provisions, and where the Tax Purchaser failed to even file a secured proof of claim, it difficult ascertain why it believes it holds anything other than an alleged claim for breach of contract.

The Tax Purchaser alleges that the Debtors are breaking their "settlement agreement" and that the Plan is now a contract which is enforceable by its terms, citing *In re Modern Steel Treating Co.,* 130 B.R. 60, 65 (Bankr. N.D. Ill 1991). The *Modern Steel* court denied a request for modification of a confirmed plan, but that case is a pre-BAPCPA corporate bankruptcy and not an individual case under § 1127(e) of the Code, which clearly allows for certain types of modifications. This Court should note that the Tax Purchaser chose to only marginally participate in this case, by insisting on the order for the deadline of a payment to the Tax Purchaser. That was the full extent of its alleged "settlement with the Debtors." The Tax Purchaser did not vote for or against the Plan, it failed file any objections to the proposed Plan prior to confirmation and it did not file a proof of claim. Other creditors filed ballots and voted in favor of the Plan, including DuPage County, the other taxing authority. Even though the Tax Purchaser chose to stand on the sidelines for most of the process, it is now charging the Debtors with failing to live up to their "settlement agreement" with the Tax Purchaser.

The Court has the statutory authority to effectuate the Plan, allow Chase to keep its collateral position, the Debtors to keep both their Restaurant and their Residence and for the unsecured creditors to receive payment. The Debtors have paid post-petition real estate taxes, but at approximately $43,000.00, the amount to redeem the taxes with Cook County in a lump sum payment has proven difficult for the Debtors to pay without the sale of their real estate. This is not the "umpteenth" bite at the apple (see the Objection) but the Debtors' first request for an extension through the Modification and the first time Chase has offered to pay the taxes. Chase readily admits that having loaned the Debtors over $1.5 million, it is seeking to preserve

its collateral position. When Chase argues that the Debtors have "worked hard" in this case, it is merely to point out to the Court that the Debtors have made substantial efforts and payments, and that that this is not one of those many bankruptcy cases where the Debtors have either disregarded or have been unable to meet all of their financial obligations under the Plan.

There is very little case law on § 1127(e). The Tax Purchaser relies on *In re Sandford*, 498 B.R. 307 (Bankr. D.N.M. 2013), wherein the court denied a debtor's request for a modification of an individual Chapter 11 plan. *Sandford*, however, is actually helpful to Chase, because the court examined the impact of granting an extension of time for payment on each creditor class and the likelihood of whether payment would be forthcoming. The court in *Sandford* found that the majority of courts have held that granting or denying motions to modify confirmed plans under §§ 1127(e), 1229(a), and/or 1329(a) are within the bankruptcy court's sound discretion, citing *Witkowski*. The facts of *Sandford* are different from this case – the court found that *the majority of the secured creditors* in *Sanford*'s case would be harmed and delayed if the debtor's request for an extension of time to sell property was granted. None of the secured lenders in *Sandford* had received *any* payments for fourteen months. *Id.*, at 312. The court also found that the total of the secured claims of $3,500,000.00 far outweighed the total unsecured claims of about $90,000.00. *Id.* Finally, the court in *Sandford* found that evidence of an imminent sale of the debtor's property was weak. *Id.*

In looking at the same factors in *Sanford*, the largest secured creditor, Chase, supports modification of the Plan and is backstopping payment of the real estate tax redemption amount. Chase has a claim for $1.4 million in this case, which it could lose its collateral if modification was denied and the relief from stay granted. The redemption amount of the real estate taxes is approximately $43,000.00, even though the actual out-of-pocket payment by the Tax Purchaser was $34,785.39. Under the *Sandford* factors, Chase and the other creditors who have been paid

while the Restaurant is running would be overshadowed by the unfiled "claim" of the Tax Purchaser, who never bothered to file a proof of claim. Unlike *Sanford*, where no payments to creditors were being made, Chase has been receiving payment and some payments have been made to other creditors. The Plan was confirmed in April and the due date was October for the payment – not fourteen months but six months from confirmation.

Most importantly, the Debtors may fall back on Chase to make the payment, so that there is no risk to the Tax Purchaser. So even if the property the Debtors have been trying to sell does not eventually sell, Chase will pay the redemption amount. Cases under §1329(a), on which the language of §1127(e) was based, allow for modifications of confirmed plans in order to cure defaults. *See also, In re Nichols*, 440 F.3d 850, 859-860 (6th Cir. 2005) (modified chapter 13 plan proposed by the debtors to cure post-confirmation default was upheld and found to be "reasonable" where the debtors requested one modification in three years, even though the collateral was a depreciating vehicle, because the "purpose of bankruptcy law is to give the debtors a fresh start while keeping the creditor as close to its original position as possible and this provides the guiding principal behind Chapter 13 reorganization of individual debtors").

Clearly that the Tax Purchaser does not want to get paid: it wants to take the Restaurant property – to the detriment of all of the other parties in this case. Specifically, the Tax Purchaser is seeking to obtain a $850,000 property in exchange for its payment of approximately $34,000. While Chase negotiated the terms of the treatment of its secured and unsecured claim with the Debtors in the Plan, timely filed a proof of claim, voted for the Plan and openly participated in the bankruptcy process, this Court should not reward the Tax Purchaser, who came in to modify the Plan at the eleventh hour by minute order, without notice to all parties, get a "drop dead" date for payment with no clear remedies, relief or consequences, and is now attempting to take away

Chase's property rights. If this Court denies the Debtors' motion, the entire Plan fails and only one creditor, the Tax Purchaser, receives a windfall.

**III. In the event the Court does not grant the Debtors' proposed Modification, the Court should permit Chase to redeem the real estate taxes within (10) days of a court order**

In the event this Court does not allow the Debtors, who are still the owners of the Restaurant, extend the deadline to redeem the real estate taxes on the Restaurant from October 15, 2015 to April 15, 2016, based solely on the belief that the time frame requested is too long, then Chase respectfully requests that the Court shorten the time frame or provide a compromised time frame.

Finally, on an emergency basis, Chase will provide payment of the redemption amount within ten (10) business days after it receives either a W9 form from the Tax Purchaser. If that is the case, the Plan will need to be modified so that the payment date be extended *nun pro tunc* from October 15, 2015. In addition, Chase should be allowed to file an amended proof of claim, reflecting the amount paid to it on account of the tax redemption, and the Debtors should be obligated to repay that increased amount of the loan through the modified Plan.

## CONCLUSION

The Debtors should be allowed this one extension of the time to make the payment to Cook County and/or the Tax Purchaser and grant the Debtors' motion to modify of the confirmed Plan. All of the creditors, but especially Chase, will be harmed and lose significant collateral, if either the Debtors or Chase are not allowed to redeem the past due real estate taxes. There will be a substantial default under the confirmed Plan, although the Debtors have diligently paid Chase and other creditors, they will lose their Restaurant and then their Residence, since the properties are cross-collateralized. The plain language of § 1127(e) allows for the extension of time to make a payment, and since the Debtors have not defaulted on other

aspects of the Plan, it is precisely under these circumstances that this Court should exercise its discretion.

Dated: January 8, 2016

                        Respectfully submitted,

                        JPMorgan Chase Bank, N.A., Respondent,

                        By: /s/ Lauren Newman
                             One of Its Attorneys

Lauren Newman, Esq. (IL Bar No. 6188355)
Thompson Coburn LLP
55 East Monroe, 37th Floor
Chicago, Illinois 60603
Telephone: (312) 346-7500
Fax: (312) 782-3659
lnewman@thompsoncoburn.com

# CERTIFICATE OF SERVICE

The undersigned attorney, being first duly sworn on oath, deposes and says that she served a copy of this JPMorgan Chase Bank, N.A.'s Reply to the Objection of Wheeler Financial, Inc. to the Debtors Motion to Modify Plan [DOCKET NO. 99], via ECF or U.S. Mail, as designated below, on January 8, 2016.

/s/ Lauren Newman

Ramon Aguirre
Bertha Aguirre
4599 Hatch Lane
Lisle, IL 60532
(Via U.S. Mail)

Paul M. Bach
Sulaiman Law Group, Ltd.
900 Jorie Boulevard
Suite 150
Oak Brook, IL 60523
(Via ECF)

Penelope N. Bach
Sulaiman Law Group, Ltd.
900 Jorie Boulevard
Suite 150
Oak Brook, IL 60523
(Via ECF)

Robert M. Fishman
Shaw Fishman Glanz & Towbin LLC
312 North Clark Street, Suite 800
Chicago, IL 60654
(Via ECF)

David R. Doyle
Shaw Fishman Glanz & Towbin LLC
312 North Clark Street, Suite 800
Chicago, IL 60654
(Via ECF)

Patrick S. Layng
Office of the U.S. Trustee
219 S. Dearborn Street, Room 873
Chicago, IL 60604
(Via ECF)